**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**April 2, 2007**

**Charles R. Fulbruge III**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————

No. 06-20751
Summary Calendar

———————————

In The Matter Of: ZOUHAIR HILAL, also known as Danny Hilal

Debtor

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ZOUHAIR HILAL, also known as Danny Hilal,

Appellant,

v.

TRUSTEE RANDY W WILLIAMS,

Appellee.

———————————————————————————

Appeal from the United States District Court for the
Southern District of Texas, Houston Division
4:05-CV-3776

———————————————————————————

Before DAVIS, BARKSDALE, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Plaintiff Zouhair Hilal appeals the district court's dismissal

of his appeal from the bankruptcy court as moot.  We AFFIRM.

**I. BACKGROUND**

---

[*] Pursuant to 5th Cir. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5th Cir. R. 47.5.4.

After Hilal failed to pay a state court judgment against him in the approximate amount of $79,000, the state court ordered the sale of his interest in two companies: First Capital Interests, L.L.C. ("First Capital") and Blue Moon Venture, L.L.C. ("Blue Moon"). The judgment creditor, Stephen Riner, bought Hilal's interest in those entities for approximately $18,000. Hilal challenged the sale in state court, the state trial court denied his motion, and both an intermediate appellate court and the Texas Supreme Court denied his application for writ of mandamus. Shortly thereafter, on February 4, 2005, Hilal filed a chapter 11 bankruptcy petition.

On June 1, 2005, the bankruptcy court appointed Randy Williams ("the trustee") as the chapter 11 trustee. Seeking to recover First Capital and Blue Moon for the bankruptcy estate, the trustee determined that it would be in the best interest of the estate to settle the dispute with Riner rather than litigate ownership of the companies. Accordingly, the trustee and Riner proposed a settlement of the claims that included paying Riner $5 million. Riner, in exchange, agreed to pay $750,000 in taxes to the IRS and release to the trustee all liens, claims, and interests held in First Capital and Blue Moon. The trustee would assume ownership and management of the companies, and begin liquidation of the estate and payment to creditors. A formal motion to compromise was filed with the bankruptcy court on August 1, 2005, and Hilal objected.

2

The bankruptcy court approved the compromise orally on October 21, 2005, and entered the "Order Approving Compromise and Settlement," otherwise known as the "9019 Order," three days later, but temporarily stayed that order until October 31, 2005, so Hilal could file a formal, written motion for a stay. The bankruptcy court denied that written motion on October 31, and the temporary stay expired shortly thereafter. An order reflecting that ruling was entered on November 1, 2005, along with a denial of Hilal's motion for a new trial. Hilal took no further action until November 3, when he filed a notice of appeal in the district court, and November 4, when he filed an emergency motion for stay pending appeal.

In the intervening time between the expiration of the bankruptcy court's temporary stay, and Hilal's filings with the district court, the trustee and Riner consummated the settlement. The district court denied Hilal's emergency motion on November 7, 2005, and dismissed Hilal's appeal as moot on August 9, 2006. Hilal appeals. We review the district court's determination of mootness *de novo*. *In re GWI PCS 1, Inc.*, 230 F.3d 788, 799–800 (5th Cir. 2000).

## II. DISCUSSION

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *County of Los Angeles v. Davis*, 99 S.Ct. 1379, 1383 (1979). In the bankruptcy context, "mootness" is a recognition that

3

a case has gone past the point where equitable judicial relief is available. *In re Manges*, 29 F.3d 1034, 1038–39 (5th Cir. 1994). A reviewing court can "decline to consider the merits of a confirmation order when there has been substantial consummation of the plan such that effective judicial relief is no longer available — even though there may still be a viable dispute between the parties on appeal." *Id.* at 1039. In determining whether a bankruptcy case should have been dismissed as moot, we consider (1) whether a stay had been obtained, (2) whether the plan had been "substantially consummated," and (3) whether the relief requested would have affected either the rights of the parties not before the court or the success of the plan. *Id.* at 1041.

Hilal argues that the trustee improperly consummated the compromise prematurely, before Hilal had a chance to obtain a stay. By consummating expeditiously, however, the trustee and Riner were complying with the bankruptcy court's order which provided that they do so within ten days of the order's entry date, October 24. Hilal argues that the order was not yet final, but in so doing confuses "final order" and "nonappealable order." In bankruptcy proceedings, appeals are initiated by filing a notice of appeal within ten days of the entry date of the order. FED. R. BANKER P. 8001, 8002. While the order remained *appealable* for ten days, it was nevertheless *final* upon entry. As the district court correctly found, there was no legal or factual requirement that the trustee wait ten days

4

before consummating the compromise. We therefore evaluate mootness, like the district court, under the factors set forth in *In re Manges*. 29 F.3d at 1039.[1]

As the district court found, all relevant factors in an equitable mootness evaluation support the dismissal of Hilal's appeal. At the time of the consummation, there was no stay in place, nor was there a pending motion for a stay. The absence of a stay "militates in favor of dismissal for mootness." *In re GWI PCS 1*, 230 F.3d at 801. Furthermore, the compromise had already been substantially consummated at the time of Hilal's appeal. A plan is substantially consummated where substantially all property has been transferred under the plan, the debtor has assumed control of substantially all the property, and distribution of property has commenced. 11 U.S.C. § 1101(2); *Manges*, 29 F.3d at 1041. Here, that had happened: Riner was paid $4,250,000, the IRS was paid $750,000 on Riner's behalf, and the trustee acquired control of First Capital and Blue Moon for the bankruptcy estate.

Finally, a reversal of the 9019 order would substantially affect the rights of others who are not parties to this appeal. Substantial amounts of money had already been paid to Riner and the

---

[1]Hilal argues that *Manges* should not apply here because that case dealt with a plan of reorganization, rather than with a compromise and settlement. The same concerns — such as undoing transfers that have already been made, and affecting the rights of others not party to the appeal — apply equally to plans of reorganization and compromises and settlements, however, and the distinction is irrelevant to our analysis.

IRS, and loans had been pledged to other third parties.  Moreover, litigation between Riner and the trustee had been dismissed.  The adverse effect on third parties therefore also supports dismissal for mootness.  Having considered the relevant factors, we find that the district court was correct in dismissing Hilal's appeal as equitably moot.

For the foregoing reasons, we AFFIRM the district court.