UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 00-50301

---

In The Matter Of:  GRIMLAND, INC.,

Debtor

---

TNB FINANCIAL, INC.,

Appellant,

v.

JAMES F. PARKER INTERESTS,

Appellee.

---

Appeal from the United States District
Court for the Western District of Texas

---

March 12, 2001

Before:  JOLLY and DAVIS, Circuit Judges, and RESTANI, Judge.[*]

RESTANI, Judge:

This is an appeal of a district court order affirming a bankruptcy court order of surcharge.  The surcharged lienholder appeals.  We hold that the bankruptcy court erred in not granting the lienholder's objection to the surcharge.  Any technical failure to meet the deadline for objections should not have been determinative under the unique facts of this case.

**FACTS AND PRIOR PROCEEDINGS**

---

[*]      Judge of the United States Court of International Trade, sitting by designation.

Grimland, Inc. ("Grimland") operated an automotive transmission and engine rebuilding business in Austin, Texas, before it filed a petition for bankruptcy under Chapter 7 in January of 1999. [R2-50-247.] Grimland had stored over a hundred barrels of waste oil on its premises, which it leased from James F. Parker Interests ("Parker"). [Id.] The trustee of Grimland's estate moved to abandon all of Grimland's personal property, including the waste oil. [Id.] Parker objected to the abandonment, and as part of an agreed order settling the abandonment dispute, Parker was granted an administrative expense claim of up to $45,000 to cover the costs of removing the waste oil and as a reasonable rental for storing the estate's personal property on its premises pending liquidation. [Id. at 247-248.]

During these proceedings, the trustee auctioned off all the personal property of Grimland. [Id. at 248.] Appellant TNB Financial, Inc. ("TNB"), which held a perfected purchase money security interest in all of Grimland's personal property securing a debt of approximately $20,000, did not object to the sale based on assurances from the trustee that its position would be protected. The sale generated proceeds of approximately $70,000, which left the estate with funds of about $75,000 to distribute to creditors. [R2-71-313 to 314.] Thus, after the sale TNB was

2

substantially oversecured and, except for the surcharge at issue, would have been repaid in full.[1]

As of July of 1999, the actual costs to dispose of the waste oil were more than $65,000, and the rental for storage of Grimland's personal property pending liquidation was almost $24,000.  [R2-50-249.]  The total costs of the waste oil remediation and the rental of the premises were thus almost twice what Parker had previously been allowed as an administrative expense.  Parker presumably realized by May of 1999 that its expenses, for rent and for environmental remediation, would greatly exceed its administrative expense claim.  On May 21, 1999, without specifying the amount of the costs, Parker moved to have the collateral securing TNB's lien surcharged for the remediation and rental costs Parker had incurred pursuant to § 506(c) of the Bankruptcy Code.  [R2-36.]  In accordance with Local Bankruptcy Rule 9014 of the Western District of Texas, Parker's motion notified all the creditors who had been served with the motion that they had 20 days in which to request a hearing to object to the motion.  [Id.]  On May 28, 1999 Parker filed a supplemental surcharge motion to cover additional rental and remediation expenses and estimated therein a surcharge "exceed[ing] $70,000."  [R2-38-209.]

---

[1] Travis County, Texas also asserted a security interest in Grimland's collateral in the form of an ad valorem tax lien.  It does not appear as a party in this appeal.

3

TNB was served with Parker's surcharge motions. [R2-36-175; R2-38-223.] It did not object to Parker's first motion, however, within the 20-day window provided by Local Rule 9014. [R2-78-315 to 316.] Thus, on June 21, 1999, more than 20 days after the filing of Parker's first motion and still with no objection by TNB, the bankruptcy court granted Parker's first open-ended surcharge motion. [R2-42.] On June 22, 1999, the very next day, TNB filed an objection to Parker's first motion. [R2-43.] The clerk of the bankruptcy court treated the objection as a response to Parker's second, supplemental surcharge motion. A hearing on the second motion was set for July 20, 1999.[2] At the hearing, the bankruptcy court stated that surcharging TNB's collateral for the rental and remediation costs was clearly contrary to Fifth Circuit precedent. [R2-78-317.] The bankruptcy court also stated, however, that TNB had had ample time to object to Parker's first surcharge motion and had not done so. [Id. at 315 to 316.] Accordingly, the bankruptcy court granted the second surcharge motion, which, when combined with the first surcharge motion, had the effect of completely stripping TNB of its lien. [Id. at 321.]

TNB then filed, on July 26, 1999, motions for rehearing on both of Parker's surcharge motions. [R2-47-242; R2-46-245.] The

---

[2] It is unclear when TNB's counsel, who was hired on June 9, 1999, first learned that the first surcharge order had been entered. In any case, TNB does not dispute that it neglected to meet the required deadline and seeks relief under other grounds.

4

bankruptcy court held a hearing on September 7, 1999, at which it refused to reconsider the two orders it had entered in response to Parker's motions. [R2-79.] It reasoned that as it had done nothing more than enter an order in response to an unopposed motion, and as it was the responsibility of creditors to protect their own interests, there were no grounds under Fed. R. Civ. P. 60(b) to reconsider the first surcharge motion. [Id. at 341 to 342.] With regard to the second motion, the bankruptcy court concluded that its disposition of the first surcharge motion was dispositive. [Id. at 342.]

TNB appealed the bankruptcy court's refusal to reconsider its surcharge order to the district court. [R1-2.] The district court affirmed both the entry of the first surcharge order and the bankruptcy court's refusal to reconsider its actions. [R1-7-112 to 114.]

## DISCUSSION[3]

### I.   Equitable Mootness

Parker argues that this appeal is equitably moot. Unlike constitutional mootness, equitable mootness in the context of a bankruptcy appeal is not rooted in the requirements of Article III of the Constitution. Rather, it is a doctrine that courts have developed in response to the particular problems presented

---

[3]   The court has jurisdiction pursuant to 28 U.S.C. § 1291 (1994), as this is an appeal of a final decision of a district court.

by the consummation of plans of reorganization under Chapter 11.[4] An appeal is equitably moot when a plan of reorganization has been so substantially consummated that a court can order no effective relief even when there may still be a live dispute between parties to the bankruptcy proceeding. The doctrine rests on the need for finality, and the need for third parties to rely on that finality, in bankruptcy proceedings. See generally Nationwide Mut. Ins. Co. v. Berryman Prods., Inc. (In re Berryman Prods., Inc.), 159 F.3d 941 (5th Cir. 1998); Manges v. Seattle-First Nat'l Bank (In re Manges), 29 F.3d 1034 (5th Cir. 1994), cert. denied, 513 U.S. 1152 (1995).

This Circuit has set forth a three-factor test for when a bankruptcy case is equitably moot. These factors are, (1) whether the complaining party has failed to obtain a stay, (2) whether the plan (here, the liquidation) has been substantially consummated, and (3) whether the relief requested would affect the rights of parties not before the court or the success of the plan. Berryman, 159 F.3d at 944. Neither party disputes that TNB did not seek and has not won a stay of the distribution in this case, or that all of Grimland's assets have been sold and all the proceeds distributed. The parties disagree as to the

---

[4] Equitable mootness normally arises where a Chapter 11 reorganization plan is at issue. Because we find the doctrine inapplicable on other grounds, we need not resolve whether or not the doctrine may be applied in a liquidation under Chapter 7.

6

effect of the relief TNB seeks on persons not currently before this court.

TNB argues that third parties will not be disturbed if the surcharge order is reversed. It argues that reversal would require simply that Parker repay TNB the value of its secured claim. Parker responds that reversing the surcharge order would require it to demand from the contractors responsible for cleaning up the Grimland premises the monies it paid for their services. Parker further contends that reversing the surcharge order would require the other administrative claimants in this case to disgorge some of their recoveries.

First, reversing the surcharge order would have no effect on payments to the various parties who cleaned up the waste oil on the Grimland premises. Parker's responsibility to remedy the property is independent of the administration of the bankruptcy proceedings, see 42 U.S.C. § 9607(a) (1994); the bankruptcy proceedings simply provided a mechanism for Parker to reach agreement with Grimland over its share of the costs.

Second, assuming arguendo that the administrative claimants are the types of third parties the equitable mootness doctrine was meant to protect, reversing the surcharge order would have no direct effect on the other administrative claimants.[5] The other

_____

[5] Whether Parker's claim is truly an administrative claim or arises at least in part from pre-bankruptcy liabilities of Grimland is not resolved here. See Texas v. Lowe (In re H.L.S.

(continued...)

7

administrative claimants in this case would be affected if the surcharge under 11 U.S.C. § 506(c) (1994) acted to strip TNB of its priority so as to benefit all the parties junior to it. Though TNB may have been stripped of its lien in effect, it was not formally stripped of it. Rather, the § 506(c) surcharge simply required TNB to pay Parker for certain expenses of Parker that supposedly benefitted TNB. Reversing the surcharge order would simply require Parker to repay TNB. As the surcharge order did not formally reorder the priorities of TNB, Parker, and the other administrative claimants, this appeal presents a simple dispute between TNB and Parker.[6] Accordingly, the appeal is not equitably moot.

## II. The Surcharge Order

TNB argues on appeal that the bankruptcy court, and the district court on appeal, should have granted its motion to reconsider under Fed. R. Civ. P. 60(b).[7] TNB argues that in

---

[5](...continued)
Energy Co., Inc.), 151 F.3d 434, 439 (5th Cir. 1998) (finding expenses for clean-up of post-petition environmental liabilities to be administrative expenses; not reaching the issue of whether post-petition expenses for remediation of pre-petition environmental liabilities are administrative expenses).

[6] Of course, the administrative claimants are not strangers to the bankruptcy case, and as parties intimately connected to the case administration, their expectations may not be settled, unlike purchasers at sales of estates. We make no determinations as to what further actions the bankruptcy court may wish to take in this matter with regard to administrative claimants.

[7] TNB also argues that Hartford Underwriters Ins. Co. v.
(continued...)

8

granting Parker's motions to surcharge, the bankruptcy court made a mistake, which is a basis for relief under Rule 60(b).[8]

The bankruptcy court opined, at the July 20 hearing, that the surcharge order was clearly contrary to Fifth Circuit precedent. Parker has not rebutted this point. Indeed, 11 U.S.C. § 506(c) provides that, "The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." We have interpreted this language to require a quantifiable and direct benefit to the secured creditor; indirect or speculative benefits may not be surcharged, nor may expenses that benefit the debtor or other creditors. See French Mkt. Homestead, FSA v. P.C., Ltd. (In re P.C., Ltd.), 929 F.2d 203, 205 (5th Cir. 1991); New Orleans Pub. Serv., Inc. v. First Fed. Sav. & Loan Ass'n (In re Delta Towers Ltd.), 924 F.2d 74, 76-77

---

[7](...continued)
Union Planters Bank, N.A., 120 S. Ct. 1942 (2000), establishes that no one but the trustee has statutory standing to seek a surcharge under 11 U.S.C. § 506(c). TNB did not raise this issue before the bankruptcy or district courts, as Hartford was decided during the pendency of the appeal. Because this issue was not raised below, it is not clear whether the trustee authorized or ratified Parker's action in a way that might overcome the Hartford problem. See id. at 1951 n.5. In view of our denial of relief to Parker, no purpose would be served by remand to consider this issue.

[8] TNB does not argue that its failure to request a hearing on Parker's first motion for surcharge constitutes excusable neglect.

(5th Cir.), reh'g denied, 1991 U.S. App. LEXIS 4829 (1991). The default rule in bankruptcy is, accordingly, that administrative expenses are paid out of the estate and not by the secured creditors of the debtor. See P.C., Ltd., 929 F.2d at 205; Delta Towers, 924 F.2d at 76-77. The remediation of the waste oil did not benefit TNB, as the waste oil was stored in drums on the Grimland premises and did not, apparently, contaminate any of Grimland's personal property. Nor did the storage of the personal property on Grimland's premises benefit TNB. As a secured creditor, TNB was entitled to repossess and auction off its collateral. That the auction was conducted by the trustee afforded TNB no real benefit beyond what it could have recovered on its own. Thus, it seems clear that entry of this surcharge order was contrary to established law.

Circuit precedent does allow the use of Rule 60(b), made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 9024, to correct judicial error. When a judicial decision contains an obvious error of law, apparent on the record, then the error may be corrected as a mistake pursuant to Rule 60(b). The error of law must involve a fundamental misconception of the law or a conflict with a clear statutory mandate. See Hill v. McDermott, 827 F.2d 1040, 1043 (5th Cir. 1987), cert. denied, 484 U.S. 1075 (1988); Chick Kam Choo v. Exxon Corp., 699 F.2d 693, 695 (5th

10

Cir.), cert. denied sub nom. Chick Kam Choo v. Esso Oil Co., 464 U.S. 826 (1983).

Granting or denying a motion under Rule 60(b) is within the discretion of the district court, and we review that decision only for an abuse of discretion. See Halicki v. La. Casino Cruises, Inc., 151 F.3d 465, 470 (5th Cir. 1998), cert. denied, 526 U.S. 1005 (1999). Parker argues that the bankruptcy court, and the district court in affirming the bankruptcy court, did not in fact make any mistakes in this case. Rather, it argues that the bankruptcy court simply entered an order in response to an uncontested motion. Parker notes, and both the bankruptcy court and the district court agreed, that Local Rule 9014 of the Western District of Texas puts the onus on TNB to respond and contest the motion.

In this case, however, the local rule is not dispositive and the bankruptcy court should have ruled on the merits of TNB's objection. First, TNB was entitled under the law to maintain its entire lien position. Second, although TNB should have recognized that the first surcharge motion could put its position in jeopardy, the motion contained no dollar amounts which would clearly alert TNB to the issue. The extent of the lien stripping was unclear and the finalization of the surcharge amount remained an open issue which was not resolved until the hearing on the second surcharge motion. Third, appellant filed a written

11

objection before the hearing on the second surcharge motion and participated in that hearing, making its position clear to the bankruptcy court. Only after that hearing did the court enter an order setting the amount of the surcharge and effectively depriving appellant of its lien position.

Negative noticing in bankruptcy serves an important function. It allows the court to issue orders necessary to the prompt disposition of property and other matters essential to a debtor's efficient reorganization or maximization of creditors' recoveries. Under Fed. R. Bankr. P. 9014, contested matter motions must provide for notice and an opportunity for the affected party to be heard. The bankruptcy court relies on the notice to bring forth interested parties. See Oppenheim, Appel, Dixon & Co. v. Bullock (In re Robintech, Inc.), 863 F.2d 393, 398 (5th Cir.), cert. denied, 493 U.S. 811 (1989). Nonetheless, there was no particular urgency to the surcharge issue and any belatedness of the objection to the open-ended request for surcharge would not have delayed the case. The second hearing was necessary to finalize the matter, and, as indicated, TNB objected before that hearing and appeared at that hearing to make its case.

Given the complete loss of the value of plaintiff's lien in contravention of the bankruptcy code, the bankruptcy court should have considered the totality of the circumstances, and not just

the purported technical delay in responding to the first motion. On the one hand, the bankruptcy court is a court of equity and it must undertake an analysis of equitable considerations.  On the other hand, rarely does a court abuse its discretion in holding parties to strict time limits found in local rules.  Cf. FDIC v. Yancey Camp Dev., 889 F.2d 647, 649 (5th Cir. 1989) (setting aside default judgment issued after party failed to answer motion timely because "the extraordinary facts of [that] case command[ed] such a result").  This, however, is such a rare case.

In view of the representations made to appellant by the trustee as to the security of its position, Parker's choice of motion language, the lack of time pressure, the lack of equitable factors in Parker's favor and the extreme deprivation of TNB's legal rights, the bankruptcy court abused its discretion in not hearing appellant's claim on the merits at the hearing on the second motion to finalize the surcharge.  It also abused its discretion in failing to reconsider its denial of appellant's objection to the surcharge.  See Seven Elves, Inc. v. Eskenazi, 635 F.2d 396, 403 (5th Cir. Unit A Jan. 1981) (despite strong interest in finality, Rule 60(b) construed liberally so as to hear case on merits).

Accordingly, the order of the district court is **REVERSED** and this matter is **REMANDED** for proceedings consistent herewith.