# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 14, 2009

Charles R. Fulbruge III
Clerk

No. 08-40517

In The Matter Of: SAN PATRICIO COUNTY COMMUNITY ACTION
AGENCY

Debtor

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TECHNOLOGY LENDING PARTNERS LLC; NUECES FINANCIAL
CORPORATION

Appellants

v.

SAN PATRICIO COUNTY COMMUNITY ACTION AGENCY; TRUSTEE
MICHAEL B SCHMIDT; TEXAS ATTORNEY GENERAL, as Protector for
Public Interests in Charity; IRVING RONDON; MAYRA RONDON; LUPITA
PAIZ; GUSTAVO GALLARDO PINO; CESAR R NAVARRETTE; P&N AUTO
SALES; TERRY SIMPSON; NINA TREVINO; SARA CRUZ; CHRIS
VARGAS; WALTER HILL; ET AL

Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, PRADO, and SOUTHWICK, Circuit Judges.

Leslie H. Southwick, Circuit Judge:

Technology Lending Partners LLC and Nueces Financial Corporation ("the
Lenders") appeal the district court's dismissal of their appeal of the bankruptcy

court's approval of a settlement order. The Lenders argue that the district court improperly applied the doctrine of equitable mootness to dismiss. Because the case was resolved on this threshold mootness issue, the district court was never called upon to decide whether the Lenders' state-law tort claims were part of the bankruptcy estate. We agree that equitable mootness should not have been applied to the appeal to district dourt. Consequently, we REVERSE and REMAND to the district court for further proceedings.

## I. BACKGROUND

San Patricio County Community Action Agency ("the Debtor") was a nonprofit organization, which received money from the state of Texas and the federal government to facilitate its charitable activities. A portion of this money was used to purchase passenger vans.

Lupita Paiz operated as an officer or director of the Debtor. Paiz, on behalf of the Debtor, entered into a transaction with the Lenders. The Lenders agreed to purchase the vans from the Debtor and then lease the vans back for the Debtor's continued use. This transaction permitted a loan of operating funds and the receipt of title to the vehicles as security. Paiz represented to the Lenders that the Debtor had the legal right to enter into this transaction. She signed a bill of sale on behalf of the Debtor.

This litigation exists because the loan of money by the state and federal governments to purchase the vans prohibited the Debtor from entering into a contract affecting the government's interest in the property. The Lenders contend that Paiz later admitted that she was unaware that she did not have the authority to sell the vans and declared that she would not have sold the vans had she known of the restrictions.

When the Debtor was unable to make lease payments on the vans, the Lenders were unable to claim the vans as security. Government restrictions on the transfer of title left the Lenders unsecured. Therefore, in 2005, the Lenders

each filed separate state-law tort suits in Texas state court against Paiz in her individual capacity. Each suit alleged negligent misrepresentation on the part of Paiz. However, the Lenders limited the recovery they sought from Paiz to the proceeds from the Debtor's directors and officers insurance policy.

It is undisputed that the policy, which was issued by St. Paul Fire and Marine Insurance Company and provided $1 million in benefits, would cover relevant claims against Paiz in addition to claims against the Debtor. There is no issue in this appeal as to what kinds of claims the policy covered. The policy language stated that it covered a "wrongful act" by the Debtor and by other insureds. "Wrongful Act" is broadly defined in the policy, but we assume that the policy was not one simply to pay debts. We make these observations, despite that the policy is not directly in issue, because part of the background explanation by the district court for its holding was that the Lenders had no greater claim to insurance proceeds than would any of the other creditors. That would be so only if the policy covered all debts of the insured. If that were the nature of the coverage, and with claims in bankruptcy of about $2.6 million, it does not seem quite plausible that a settlement would be reached of only $650,000 on a $1 million policy. That concern, though, does not affect the result.

Paiz declared personal bankruptcy. The Lenders sought and received an order lifting the stay in Paiz's bankruptcy, which allowed the Lenders to proceed with their state court negligent misrepresentation actions.

The Debtor then filed its own Chapter 7 bankruptcy petition in March 2005. Michael Schmidt was appointed as the bankruptcy trustee. An audit by the U.S. Department of Health and Human Services in 2004 determined that the Debtor had overspent its grant funding by more than $550,000. In January 2007, just before the Lenders' state court trials were to begin, Schmidt intervened in both actions. Over the Lenders' opposition, he removed them to bankruptcy court. Schmidt had previously brought actions on behalf of the

Debtor against the Debtor's officers and directors for alleged mismanagement. Schmidt and the Texas Attorney General also both brought actions against the Debtor itself. Eventually, over the Lenders' objection, six adversary proceedings, including Schmidt's suits, the Texas Attorney General's suit, and both of the Lenders' suits, were consolidated in bankruptcy court in June 2007.

Schmidt, as trustee, moved in the bankruptcy court to appoint himself as special counsel to represent the bankruptcy estate in proceedings involving the Debtor and its officers, directors, and employees. The bankruptcy court granted the motion, which included a contingency fee schedule for Schmidt of a third of all money collected from settlement prior to trial, 45% of all money collected after trial, and half of all money collected after appeal.

Schmidt negotiated a settlement agreement with St. Paul, which was reached after mediation but before trial. In May 2007, the bankruptcy court approved the settlement agreement, holding that St. Paul would pay $650,000 of the $1 million available under the policy in exchange for the dismissal with prejudice of all claims against the policy. That dismissal included both of the Lenders' claims, which they had initially filed in state court. The bankruptcy court found that all of the proceeds of the Debtor's relevant insurance policy were part of the bankruptcy estate. The Lenders unsuccessfully opposed the settlement agreement. Their motion to stay the order approving the settlement agreement was denied.

With the settlement agreement approved, Schmidt next filed a motion for approval of an interim distribution agreement for the settlement proceeds. The bankruptcy court granted the motion. It approved a distribution agreement that gave $325,000, or half of the settlement, plus out-of-pocket expenses to Schmidt; more than $150,000 to the Texas Attorney General; and eventually left $118,961.06 to be distributed pro rata among approximately 50 unsecured creditors, including the Lenders. The Lenders filed a motion to stay the interim

distribution agreement, but they did not post a bond. The motion was denied in August 2007, and the funds were distributed.

The Lenders appealed the following orders to the district court: (1) the Order Consolidating all the Adversary Proceedings, (2) the Order Approving the Settlement Agreement, (3) the Order Denying Lenders' Motion for Stay of Order Approving Settlement Agreement, (4) the Order Granting Motion for Approval of Interim Distribution Agreement for Settlement Proceeds, and (5) the Order Denying Motion for Stay of Order Approving Interim Distribution and Denying Stay of Dismissal of Consolidated Adversaries. The parties fully briefed the merits issues before the district court, and then one month later Schmidt filed a separate motion to dismiss the appeal as equitably moot. In March 2008, the district court granted Schmidt's motion. Though the district court mentioned the merits issues, its analysis concentrated solely on the issue of equitable mootness. In granting the motion to dismiss, the court explained, "it would be inequitable and futile to consider the merits of Appellants' appeals."

This appeal followed.

## II. DISCUSSION

On this appeal, we act as the second appellate court to review the acts of the bankruptcy court. Consequently, we apply the same standard of review to the bankruptcy court's ruling as did the district court. We provide no deference to legal conclusions and analyze them anew. On the other hand, clear error must be shown before we would reverse a finding of fact. Mixed questions of law and fact that may be in the case receive *de novo* review. *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 583 (5th Cir. 2008).

The controlling holding by the district court was that the appeal was equitably moot by the time it arrived. That is a legal determination subject to *de novo* review. *In re GWI PCS 1 Inc.*, 230 F.3d 788, 799-800 (5th Cir. 2000).

The doctrine of equitable mootness is designed "to address equitable concerns unique to bankruptcy proceedings." *In re Manges*, 29 F.3d 1034, 1038 (5th Cir. 1994). It is not an Article III inquiry into whether a case or controversy exists, but rather "a recognition by the appellate courts that there is a point beyond which they cannot order fundamental changes in reorganization actions." *Id*. at 1039. "An appeal is equitably moot when a plan of reorganization has been so substantially consummated that a court cannot order effective relief even though a live dispute remains among some parties to the bankruptcy case." *In re Hilal*, 534 F.3d 498, 500 (5th Cir. 2008). Both of the latter two statements of principle refer to plans of reorganizations. Such plans maintain a debtor in operation and may result in substantial changes in ownership, management, and business relations. New contracts may be entered, such as new arrangements with suppliers and others. All of that and more result in expectation interests that courts are loath to upset.

Whether the doctrine has much if any relevance to a bankruptcy under a Chapter 7 liquidation, as this one, is a threshold issue. "Equitable mootness normally arises where a Chapter 11 reorganization plan is at issue." *In re Grimland, Inc.*, 243 F.3d 228, 231 n.4 (5th Cir. 2001). The doctrine responds "to the particular problems presented by the consummation of plans of reorganization under Chapter 11." *Id*. at 231. Indeed, equitable mootness is often defined in relation to reorganization plans. *See, e.g.*, *In re Hilal*, 534 F.3d at 500; *In re Berryman Prods., Inc.*, 159 F.3d 941, 944 (5th Cir. 1998); *In re Manges*, 29 F.3d at 1039; 13B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3533.2.3 (3d ed. 2008). *But see In re Pequeno*, 246 F. App'x 274 (5th Cir. 2007) (finding equitable mootness in a Chapter 7 proceeding in an unpublished and therefore non-precedential opinion).

It is certainly arguable that equitable mootness has no application to an appeal in a Chapter 7 liquidation. Yet, there is no reason to make such a comprehensive statement here. Instead, we find that under traditional equitable mootness analysis, this case is not moot.

We start with some standard qualifiers to equitable mootness. "Substantial consummation of a reorganization plan is a momentous event, but it does not necessarily make it impossible or inequitable for an appellate court to grant effective relief." *In re Manges*, 29 F.3d at 1042-43 (internal quotation marks and citation omitted). Further, "equitable mootness need not foreclose an appeal from aspects of Chapter 11 plan confirmation that solely concern professional compensation and releases." *In re Hilal*, 534 F.3d at 501; *see In re SI Restructuring, Inc.*, 542 F.3d 131, 136-37 (5th Cir. 2008) (holding that a challenge to the disbursement of attorney's fees was not equitably moot). Whatever else may be equitably moot, the Lenders' claim to have a portion of Schmidt's attorney's fees disgorged seems beyond the reach of the doctrine.

We examine three factors in the usual equitable mootness assessment: "(1) whether a stay has been obtained, (2) whether the plan has been 'substantially consummated,' and (3) whether the relief requested would affect either the rights of parties not before the court or the success of the plan." *In re Manges*, 29 F.3d at 1039. "The ultimate question to be decided is whether the Court can grant relief without undermining the plan and, thereby, affecting third parties." *In re SI Restructuring, Inc.*, 542 F.3d at 136. In this case, the first two factors are not at issue, at least factually. The Lenders did not obtain a stay. The settlement has mostly and perhaps entirely been paid, but whether that is the equivalent of "substantially consummated" can be deferred.

The remaining factor is whether the relief requested would affect the success of the plan or the rights of parties not before the court. The relief that the Lenders would receive from a finding that their state-law claims should not

have been removed to bankruptcy court would be a restarting of their proceedings against Paiz in state court. Were the Lenders to be successful in those claims, then Paiz could make a claim on benefits payable under the insurance policy. Everyone affected has been involved in these bankruptcy proceedings as creditors, trustee, or as a non-party insurance company entering a settlement with the specific purpose of having it approved by the court.

This case involves the payment of money to parties who were before the bankruptcy court, with three-quarters of the settlement being paid to either Schmidt or the state of Texas. We realize that the money paid to the state was then to be given to a comparable charity or charities. Still, we do not find that fact to create a hardship in this case sufficient to outweigh the general right of dissatisfied litigants to have a review of their appellate issues.

Indeed, we find little difference in the equities in this case from those in general civil appeals in which a money judgment was entered, but no stay was obtained. There is a provision for seeking a stay of a judgment in appeals in such cases. Fed. R. App. P. 8(a). If there is no stay, a money judgment involving multiple parties may be paid prior to a ruling on the appeal. If informed of those payments, we do not consider dismissing the appeal with a statement that equity now prevents us from reviewing the merits. That is true even though in some cases, the money would not be recoverable if the judgment were reversed. The principal entity who loses *pro tanto* is the appellant who did not get the stay and cannot recover all of the payments already made. It has never been the law that failure to get the stay moots the appeal.

We are aware that settlement agreements can play an important role in improving the odds for the overall success of a bankruptcy plan. *See, e.g.*, *In re Hilal*, 226 F. App'x 381 (5th Cir. 2007); *In re Morningside Mobile Home RV Park*, 32 F. App'x 130 (5th Cir. 2002); *In re U.S. Brass Corp.*, 169 F.3d 957 (5th Cir. 1999). In those cases, the settlement agreements and releases were part of a

8

larger plan of reorganization. In one case, we found that a dispute in a Chapter 7 bankruptcy between two parties over a surcharge order was not equitably moot because reversing the order would simply require one party to repay the other. *In re Grimland*, 243 F.3d at 232. There are more parties involved in this case, but not a different principle. There is no reorganization plan here that has been put into effect and would need to be unraveled. If the settlement agreement in this case eventually were set aside, money received under the interim disbursement order would need to be repaid. Some of the creditors may be financially unable to repay. That difficulty is not of the same nature or magnitude as the undoing of a complicated plan of reorganization.

Equitable mootness is, to be redundant, an equitable doctrine. On these facts, even if the doctrine has some legal relevance to Chapter 7 liquidations, we do not apply it. Equity much more strongly lies with the parties who raise a legitimate argument that their claims were not properly part of the bankruptcy estate in the first place. That claim should be reviewed absent stronger equitable mootness arguments than we have seen here.

The district court never reached the summary judgment issues on whether the Lenders' claims were part of the estate. Instead, the appeal was simply dismissed on motion. The only order being reviewed today concerns equitable mootness. We go no further than to conclude that the doctrine does not apply.

We REVERSE and REMAND for further proceedings.