**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 29, 2009

Charles R. Fulbruge III
Clerk

No. 09-30360

In the Matter of:  BODENHEIMER, JONES, SZWAK, & WINCHELL L.L.P.,

Debtor

----------------------------

DAVID A. SZWAK,

Appellant

v.

DALE C. EARWOOD; MARY E. WINCHELL,

Appellees

Appeal from the United States District Court
for the Western District of Louisiana

Before REAVLEY, CLEMENT, and SOUTHWICK, Circuit Judges.

REAVLEY, Circuit Judge:

Appellant David Szwak appeals the district court's order affirming the bankruptcy award to Appellee Dale Earwood of $45,227.53 for his services and expenses as a state-law liquidator and later as a federally superseded custodian of a now-bankrupt law firm.  Because the bankruptcy court failed to consider how Earwood's services and expenses met the terms of 11 U.S.C. § 543(a) and

benefitted the bankruptcy estate when determining whether they qualified as an administrative expense, we hold the award to be error and an abuse of the bankruptcy court's discretion. Accordingly, we REVERSE and REMAND for further proceedings.

I.

In 2006, Szwak and Appellee Mary Winchell were the last remaining partners in Bodenheimer, Jones, Szwak, and Winchell, a Shreveport, Louisiana, law firm ("the Partnership"). In January 2006, Szwak filed a petition for judicial dissolution and liquidation of the Partnership. At a subsequent hearing, a state court judge appointed Earwood to serve as liquidator.

In April 2006, Szwak – in his capacity as a general partner – filed an involuntary petition for commencement of bankruptcy proceedings against the Partnership. Winchell – in her capacity as a general partner – opposed the involuntary bankruptcy and sought dismissal of the case. Earwood, now a federally superseded custodian of the Partnership, also opposed the bankruptcy. To aid in his opposition to the bankruptcy, Earwood employed outside legal counsel.

In July 2006, Earwood filed an application to recover his fees as liquidator of the Partnership and superseded custodian of the bankruptcy estate, pursuant to 11 U.S.C. § 543(c)(2) and Federal Rule of Bankruptcy Procedure 2016. Specifically, Earwood sought $47,189.78 for both his pre- and post-petition services, $549.78 for his out-of-pocket expenses, and $23,227.85 for his attorneys' fees in opposing the bankruptcy. In August 2006, over Szwak's objection, the bankruptcy court authorized an interim payment of $28,000 to Earwood from the estate, and stayed further proceedings with regard to the application.

A year later, in August 2007, Earwood and the estate's Chapter 7 Trustee[1] reached a settlement and compromise, in which the Trustee offered to pay Earwood $21,500.00 to satisfy all remaining claims Earwood had against the estate. Earwood agreed to the offer of settlement, and the Trustee filed a Motion to Compromise. Szwak opposed the Motion to Compromise.

Later that month, the bankruptcy court conducted an evidentiary hearing on the Trustee's Motion to Compromise. At the conclusion of the hearing, the court found that Earwood "was a poor choice for the liquidator in this case." Specifically, the court found that "the manner and method in which he chose to conduct his fiduciary statutory duties was wrong for this type of business. In fact it jeopardized the client's well-being; it jeopardized individual attorneys' well-being." Nevertheless, the court held that Earwood was entitled to compensation for his work as a liquidator and superseded custodian, including his hiring of counsel to oppose the bankruptcy. Specifically, the court stated that "Earwood believed he was doing what he had been tasked to do, and I believe that his belief was reinforced not once, not twice, but a number of times by the presiding judge . . . ." Accordingly, the court stated "that whether I think he was wrong or not is not an issue[.]" The court then informed the parties that it would only approve a compromise that would take into consideration Earwood's expenses for opposing the bankruptcy. Additionally, the court held that Earwood did not need to show that his actions benefitted the estate to claim compensation. Instead, the court held that "[i]t's only necessary that [Earwood] show that the payment would be payment of reasonable compensation for services rendered and cost and expenses incurred by such custodian." At this point, the bankruptcy court dictated to the parties a final Compromise

---

[1] All references in this order to the "Trustee" are to the court-appointed Chapter 7 Trustee and not to the United States Trustee or its appointed agent overseeing the bankruptcy. *See* 11 U.S.C. § 323 (outlining role and capacity of an estate's trustee).

Settlement to which Earwood and the Trustee agreed, once again over Szwak's explicit objections.

In September 2007, the bankruptcy court issued an order making final the $28,000.00 interim payment that the court originally awarded in August 2006, identifying the funds as part of the Compromise Settlement. The bankruptcy court also approved the Compromise Settlement between the parties. As part of the Compromise Settlement, the bankruptcy court directed the Trustee to pay Earwood full reimbursement for his legal fees of $23,237.85, which he had incurred when opposing the bankruptcy. The court also directed the estate's Trustee to pay Earwood his liquidator fees, but at an hourly rate significantly less than that set forth by the state court, ultimately granting him a reimbursement of $17,237.53. In October 2007, the bankruptcy court revised its September order and stipulated which fees came out of the interim payment and which fees remained to be paid. The second order also increased Earwood's liquidator fees to $21,449.00, and added reimbursement for expenses of $549.78, for a total of $21,999.68. This resulted in a total award for Earwood and his counsel of $45,227.53, which remains the amount in controversy.

Szwak appealed the bankruptcy court's orders approving the Compromise Settlement to the district court for the Western District of Louisiana. In his appeal, Szwak argued that the bankruptcy court legally erred by refusing to apply the "Direct Benefit Rule," a doctrine "which would have required Earwood [and his counsel] to show that their services and expenditures benefitted the estate as a prerequisite to approval of their requests for compensation and reimbursement of expenses." Szwak also argued that the bankruptcy court failed to consider all the necessary factors pursuant to Fifth Circuit precedent when approving the Compromise Settlement. In March 2009, the district court affirmed the bankruptcy court's orders.

II.

When reviewing a district court order that itself reviews a bankruptcy court order, an appellate court applies the same standard of review as did the district court. *In re San Patricio County Cmty. Action Agency*.[2] Findings of fact are reviewed for clear error.[3] Issues of statutory interpretation are reviewed de novo. *In re Nowlin*.[4] Mixed questions of law and fact are also reviewed de novo.[5] When reviewing a bankruptcy court's approval of a compromise settlement, an appellate court reviews for abuse of discretion. *In re Foster Mortgage Corp.*[6]

III.

Before reaching the merits of the case, we address Earwood's argument that events subsequent to the bankruptcy court's approval of the Compromise Settlement have rendered this case moot. We hold that they have not.

The doctrine of equitable mootness "is a prudential, not a constitutional, doctrine that evolved in response to the particular necessities surrounding consummation of confirmed [Chapter 11] bankruptcy reorganization plans." *In re Hilal*.[7] "An appeal is equitably moot when a plan of reorganization has been so substantially consummated that a court cannot order effective relief even though a live dispute remains among some parties to the bankruptcy case."[8]

---

[2] 575 F.3d 553, 557 (5th Cir. 2009).

[3] *Id.*

[4] 576 F.3d 258, 261 (5th Cir. 2009) (citing *United States v. Valle*, 538 F.3d 341, 344 (5th Cir. 2008)).

[5] *San Patricio County*, 575 F.3d at 557 (citing *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 583 (5th Cir. 2008)).

[6] 68 F.3d 914, 917 (5th Cir. 1995).

[7] 534 F.3d 498, 500 (5th Cir. 2008) (citing *In re Grimland, Inc.*, 243 F.3d 228, 231 (5th Cir. 2001)); *see also In re Manges*, 29 F.3d 1034, 1038-39 (5th Cir. 1994).

[8] *Hilal*, 534 F.3d at 500 (citing *Grimland*, 243 F.3d at 231).

When determining whether to declare a case equitably moot, the court applies the following three factors: (1) whether a stay has been obtained, (2) whether the bankruptcy reorganization plan has been "substantially consummated," and (3) whether the relief requested would affect either the rights of parties not before the court or the success of the plan.[9] It is questionable whether the doctrine of equitable mootness applies to Chapter 7 bankruptcy liquidations.[10] However, even if equitable mootness applies in some Chapter 7 bankruptcies, it does not do so here.

Neither party contests that Szwak has failed to obtain a stay. Thus, the first factor is satisfied in favor of mootness. Moreover, the Partnership has been fully liquidated and all funds disbursed, thus appearing to satisfy the second factor in favor of mootness.[11] However, as part of the final liquidation of the Partnership, Szwak and Winchell – who were the final remaining creditors of the Partnership – entered into a comprehensive compromise settlement wherein all issues regarding the Partnership were settled between them and with the estate, except the instant litigation. Specifically, the Szwak-Winchell Agreement stated:

> Any other provisions or references notwithstanding, Szwak shall retain the right to pursue and to receive as a portion of this settlement compromise any recovery that might result for the benefit of this bankruptcy estate or for the benefit of Szwak or Winchell from In the Matter of: Bodenheimer, Jones, Szwak, & Winchell L.L.P., Debtor, David A Szwak, Appellant, V. [sic] Dale C.

---

[9] *Manges*, 29 F.3d at 1039 (citations omitted).

[10] *See San Patricio County*, 575 F.3d at 558 ("It is certainly arguable that equitable mootness has no application to an appeal in a Chapter 7 liquidation."); *Grimland*, 243 F.3d at 231 n.4 ("Equitable mootness normally arises where a Chapter 11 reorganization plan is at issue.").

[11] *See Grimland*, 243 F.3d at 231 (recognizing the "substantially consummated" factor in a Chapter 7 bankruptcy satisfied when all of debtor's assets had been sold and proceeds distributed).

Earwood; Mary E. Winchell, Appellee, currently pending before the United States Court of Appeal [sic] for the Fifth Circuit. It is further agreed that no recovery in that matter shall be had against Winchell.

The Szwak-Winchell Agreement took place subsequent to the approval of the Compromise Settlement at issue in this appeal. However, when determining mootness, a court may review relevant evidence of subsequent events not available to the trial court.[12] Given Szwak's express reservation of rights to any assets of the Partnership that this appeal may affect, the fact that the liquidation has been "substantially consummated" does not militate in favor of mootness. Accordingly, the second factor does not ultimately favor mootness.

However, even if the circumstances completely satisfied the first two mootness factors, case law demonstrates that Earwood's claim for mootness may still fail.[13] "'The ultimate question to be decided [in a mootness inquiry] is whether the Court can grant relief without undermining the plan and, thereby, affecting third parties.'"[14] Currently, the only relevant party in interest not before the court is the liquidated estate, which is not truly a "third-party" in the bankruptcy but a central litigant whose assets remain at issue. Even though the case would have to be reopened and the Trustee reappointed if we were not to hold this case moot, the estate and its Trustee "are no strangers to the plan and . . . have been on notice of this contingent exposure since early in the confirmation process."[15] Their renewed involvement in this case is therefore not

---

[12] *Manges*, 29 F.3d at 1041 (citing, e.g., *Bd. of License Comm'rs v. Pastore*, 469 U.S. 238, 240, 105 S. Ct. 685, 686 (1985)).

[13] *See Hilal*, 534 F.3d at 500-01; *Grimland*, 243 F.3d at 231-32.

[14] *San Patricio County*, 575 F.3d at 558 (quoting *In re SI Restructuring, Inc.*, 542 F.3d 131, 136 (5th Cir. 2008)).

[15] *Hilal*, 534 F.3d at 500.

the kind of circumstance the mootness doctrine appears designed to protect.[16] Earwood also argues that his full claim against the estate is larger than the amount he ultimately received in the Compromise Settlement, and that disturbing the Settlement would potentially expose the estate to liability that would require a redistribution of other awards. However, given our holding in this opinion that the bankruptcy court erred in awarding Earwood his claimed fees without first determining if his actions benefitted the estate, it is unlikely that any subsequent award on remand will be larger than the current amount in controversy.

In conclusion, reopening the bankruptcy case to redistribute improperly disbursed funds between the two current parties would not upset the liquidation plan or disturb the settled interests of parties not before the court. In any case, reopening the case is "not of the same nature or magnitude as the undoing of a complicated [Chapter 11] plan of reorganization," and therefore does not warrant a holding of equitable mootness.[17]

## IV.

We now turn to the merits of the case. Szwak argues that the bankruptcy court committed legal error by approving the Compromise Settlement without first determining whether Earwood's services and expenses benefitted the estate. We agree.

A bankruptcy case may commence where, as here, a general partner of a firm files a petition for involuntary bankruptcy.[18] At that moment, Earwood's position and authority changed from state-law liquidator of a Partnership to a

---

[16] *See id.*; *San Patricio County*, 575 F.3d at 559-60; *see also* 11 U.S.C. § 350(b) ("A [bankruptcy] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.").

[17] *See San Patricio County*, 575 F.3d at 559.

[18] *See* 11 U.S.C. § 303.

federally superseded custodian of a bankruptcy estate.[19]   As superseded custodian, Earwood's authority and obligations were strictly circumscribed by statute.  Once Earwood had knowledge of the commencement of the bankruptcy petition, he was specifically prohibited from

> mak[ing] any disbursement from, or tak[ing] any action in the administration of, property of the debtor, proceeds, product, offspring, rents, or profits of such property, or property of the estate, in the possession, custody, or control of such custodian, *except such action as is necessary to preserve such property.*[20]

Earwood was also required to

> (1) deliver to the [Chapter 7] trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case; and

---

[19]   Earwood was appointed liquidator of the partnership pursuant to LA. REV. STAT. ANN. § 12:142 D (1994), which states:

> If the shareholders or incorporators do not authorize conduct of the liquidation out of court, the corporation shall file a petition with the court, praying that the corporation be liquidated and dissolved under the supervision of the court, whereupon the court shall appoint a liquidator, upon such conditions as to bond and compensation as it may deem proper. Thereafter the liquidation proceedings shall be conducted under the supervision and orders of the court.

The federal bankruptcy statutes define "custodian" as

> (A) receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title;
> (B) assignee under a general assignment for the benefit of the debtor's creditors; or
> (C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors.

11 U.S.C. § 101(11).

[20] 11 U.S.C. § 543(a) (emphasis added).

(2) file an accounting of any property of the debtor, or proceeds, product, offspring, rents, or profits of such property, that, at any time, came into the possession, custody, or control of such custodian.[21]

Once Earwood had performed these duties, the bankruptcy court was to "provide for the payment of reasonable compensation for services rendered and costs and expenses incurred . . . ."[22] A custodian's compensation for "services" and "actual, necessary expenses" are an administrative expense of the estate and are thereby entitled to priority in the bankruptcy proceedings.[23] In addition to compensation for services and "actual, necessary expenses," a superseded custodian's compensation may include "reasonable compensation for professional services rendered by an attorney" employed by the custodian to further an "allowed" expense, as well as that attorney's "actual, necessary expenses."[24]

The record indicates that once Szwak had filed the involuntary petition for bankruptcy, Earwood focused his efforts on opposing the bankruptcy.[25] Indeed,

---

[21] *Id.* § 543(b).

[22] *Id.* § 543(c)(2).

[23] *Id.* § 503(b)(3)(E). This statute states, in relevant part:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including . . . (3) the *actual, necessary expenses* . . . incurred by . . . (E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian[.]

(emphasis added).

[24] *Id.* § 503(b)(4).

[25] While Earwood submitted detailed records of his services between January 17, 2006 and April 3, 2006, he has submitted no record of his services after the commencement of the bankruptcy. Indeed, nothing in Earwood's timesheets submitted with his application for compensation indicates he was engaged in the authorized duties of a superseded custodian outlined in § 543(b)(1)-(2). However, Earwood expressly asserts in various places throughout the record that he engaged in what he called his "fiduciary duty" to oppose the bankruptcy. Therefore, absent any record to the contrary, we are left to assume that his actions post-

10

all of his attorneys' fees, which comprise more than half of the amount in controversy, stem from opposing the bankruptcy. However, nowhere in the relevant bankruptcy statutes does it state that a superseded custodian is authorized to oppose a bankruptcy petition or to employ the estate's resources in doing so. Indeed, as mentioned above, the statute governing a superseded custodian's post-petition duties states explicitly that unless the custodian is expressly authorized by the bankruptcy court to continue in the administration of the estate, the custodian is restricted to delivering all property to the trustee and filing an accounting of all property that came into the custodian's possession.[26] Earwood was well aware of these obligations and the limits on his authority because his application for compensation, reimbursement, and attorneys' fees cited this section of the Bankruptcy Code as authority for his entitlement. Nevertheless, Earwood failed to relinquish control of the estate property until ordered to do so by the district court. Earwood also failed to file an accounting of the estate's property. For Earwood to claim that he is entitled to compensation for the ultra vires "service" of opposing the bankruptcy when he failed to first complete his statutorily-mandated service of winding up the estate borders on the absurd.[27] Indeed, Earwood has made no credible argument that his opposition to the bankruptcy was somehow "necessary" to preserve the

---

petition were largely confined to opposing the bankruptcy.

[26] *See* § 543(b). The bankruptcy court may excuse a custodian's compliance with subsections (a) and (b) if, after notice and hearing, it finds that it is in the best interests of the debtor or equity security holders that continued possession, custody, or control of the estate remain with the pre-petition custodian. *Id.* § 543(d)(1). In the instant case, however, the bankruptcy court made no such finding and gave Earwood no authorization to continue the administration of the estate post-petition.

[27] *See. e.g., In re Posadas Assocs.*, 127 B.R. 278, 282 (Bankr. D.N.M.1991) (holding that "where the custodian incurs costs not for complying with the turnover provisions of the Code but for resisting turnover, the Court finds that prior court approval is necessary in order for the fees and costs to be considered for administrative expense priority").

property of the bankruptcy estate.[28] Accordingly, a request for compensation in this case that includes fees for opposing the bankruptcy cannot be considered "reasonable compensation" under § 543(c)(2). Nor can we consider Earwood's attorneys' fees to be derivative of an "allowable" expense under 503(b)(3)(E) and thus compensable under § 503(b)(4). As the bankruptcy court explicitly approved these fees as part of the Compromise Settlement, its decision to do so was legal error.

In addition, when reviewing Earwood's fee application, the bankruptcy court stated that it would not consider whether Earwood's services benefitted the estate. In doing so, the bankruptcy court once again erred. While pre-petition services are not governed by § 543, they are governed by § 503(b)(3)(E), which allows payment from the bankruptcy estate to pre-petition custodians for services and "actual, necessary expenses."[29] Earwood argues that because the words "benefit to the estate" are not in 503(b)(3)(E), no such requirement exists. However, we have interpreted the terms "actual" and "necessary" as requiring a benefit to the estate under a related provision of § 503, despite the fact that no corresponding language is found in that provision. *See In re Jack/Wade Drilling, Inc.*[30] As we have previously stated, "[t]he 'benefit' requirement has no

---

[28] *See* § 543(a).

[29] While § 503 generally only accords an "administrative expense" priority status to claims for post-petition services, § 503(b)(3)(E) "expressly authorizes compensation for the prepetition services of a custodian or receiver superseded under 11 U.S.C. § 543 and is an exception to the general rule with respect to the allowance of compensation for exclusively postpetition activities as an administrative expense." *In re Snergy Props., Inc.*, 130 B.R. 700, 704 (Bankr. S.D.N.Y. 1991) (citing *In re Hearth & Hinge, Inc.*, 28 B.R. 595, 597 (Bankr. S.D. Ohio 1983)); *see also In re Statepark Bldg. Group, Ltd.*, No. 04-33916-HDH-11, 2005 WL 2589179, at *2 (Bankr. N.D. Tex. June 29, 2005).

[30] 258 F.3d 385, 387 (5th Cir. 2001) ("In order to qualify as an 'actual and necessary cost' under section 503(b)(1)(A), a claim against the estate must . . . [be] a result of actions taken by the trustee *that benefitted the estate*.") (emphasis added) (citing *In re TransAmerican Natural Gas Corp.*, 978 F.2d 1409, 1416 (5th Cir. 1992)); *see also In re H.L.S. Energy Co.,* 151 F.3d 434, 437 (5th Cir. 1998); *NL Indus., Inc. v. GHR Energy Corp.*, 940 F.2d 957, 966 (5th Cir.

independent basis in the Code, however, but is merely a way of testing whether a particular expense was truly 'necessary' to the estate: If it was of no 'benefit,' it cannot have been 'necessary.'"[31]

Moreover, the "benefit to the estate" requirement for "services" of pre-petition liquidators and post-petition custodians is supported by long-established pre-Bankruptcy Code precedent. The "benefit to the estate" doctrine was first recognized in *Randolph & Randolph v. Scruggs*, where Justice Holmes, writing for a unanimous Court, held that a state-law assignee of a debtor's estate was entitled to seek payment for services that he undertook prior to the adjudication of the bankruptcy, inasmuch as those services benefitted the bankruptcy estate.[32] The Court added, however, that "[w]e are not prepared to go further than to allow compensation for services which were beneficial to the estate. Beyond that point we must throw the risk of his conduct on the assignee, as he was chargeable with knowledge of what might happen."[33] The Court also concluded that the assignee's decision to contest the bankruptcy once it had commenced did not appear to be a benefit to the estate, and therefore resulting fees were not allowable expenses entitled to priority.[34]

Since the Supreme Court's decision in *Randolph*, Congress enacted the Bankruptcy Code.[35] Admittedly, Congress made no mention of the "benefit to the estate" rule in the provisions of the Code governing the services of

---

1991) ("Courts have construed the words 'actual' and 'necessary' narrowly: the debt must *benefit [the] estate* and its creditors.") (citations omitted and emphasis added)).

[31] *H.L.S. Energy Co.,* 151 F.3d at 437 (citing LAWRENCE P. KING, ED., 4 COLLIER ON BANKRUPTCY ¶ 503.06 [3] [b] (15th rev. ed. 1998)).

[32] 190 U.S. 533, 538-39, 23 S. Ct. 710, 712-13 (1903).

[33] *Id.* at 539, 23 S. Ct. at 713.

[34] *Id.*

[35] *See* Pub. L. No. 95-598, §§ 503, 543, 92 Stat. 2549 (1978).

superseded custodians. However, "[w]hen Congress amends the bankruptcy laws, it does not write 'on a clean slate.'" *Dewnsup v. Timm*.[36] Indeed, we must "not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." *Cohen v. de la Cruz*.[37] There is no indication that Congress intended to overturn the "benefit to the estate" doctrine when passing the statutes governing payment to superseded custodians. Indeed, the legislative history points to the contrary.[38]

Nevertheless, Earwood argues that by including language that expressly requires a bankruptcy court to employ a "benefit to the estate" analysis in other Code sections, Congress signaled that it had abandoned this pre-Code practice with regard to superseded custodians. Specifically, Congress has included "benefit to the estate" language in § 330(a)(4)(A) and (B) when addressing the services of an examiner, trustee under Chapter 11, and other professional person. Congress has also included "benefit to the estate" language in § 503(b)(3)(B) when determining the compensation to a creditor recovering property for the estate. However, none of these examples is dispositive of the issue. As stated above, the presumption regarding pre-Code practices and their continued viability runs counter to Appellee's argument; that is, these practices remain controlling unless explicitly superseded.[39] Moreover, the Court in

---

[36] 502 U.S. 410, 419, 112 S. Ct. 773, 779 (1992) (citing *Emil v. Hanley*, 318 U.S. 515, 521, 63 S.Ct. 687, 690-691 (1943)).

[37] 523 U.S. 213, 221, 118 S. Ct. 1212, 1218 (1998) (quoting *Pa. Dept. of Pub. Welfare v. Davenport*, 495 U.S. 552, 563, 110 S. Ct. 2126, 2133 (1990)).

[38] *See* 124 CONG. REC. 32398 (1978) (statement of Rep. Edwards) ("Section 503(b)(3)(E) codifies present law in cases such as *Randolph v. Scruggs*, 190 U.S. 533, which accords administrative expense status to services rendered by a prepetition custodian or other party to the extent such services actually benefit the estate."); 124 CONG. REC. 33997 (1978) (statement of Sen. DeConcini) (same); *see also In re Miami Gen. Hosp.*, 101 B.R. 361, 364 n.8 (Bankr. S.D. Fla. 1989) ("Congress codified *Randolph* at 11 U.S.C. § 503(b)(3)(E) . . . .").

[39] *See Cohen*, 523 U.S. at 221, 118 S. Ct. at 1218.

*Randolph* specifically addressed the claims of a pre-petition assignee and his pre- and post-petition services.[40] However, the Court did not address claims from the parties and services found in §§ 330(a)(4)(A),(B) and 503(b)(3)(B). Accordingly, the *Randolph* ruling is not on point for parties and circumstances addressed in these statutes, and Congress may have needed to clarify in these sections whether a "benefit to the estate" analysis applied. At the very least, the fact that the *Randolph* Court specifically addressed the "benefit to the estate" test as it applies to a superseded custodian and his services makes its lack of inclusion in § 503(b)(3)(E) less conspicuous.

Finally, the "benefit-to-the-estate" doctrine remains a nearly universally-recognized interpretative scheme for § 503(b)(3)(E). Since the passage of the Bankruptcy Code, bankruptcy courts have almost unanimously held that *Randolph* controls custodian compensation, and they have interpreted § 503(b)(3)(E) to include the "benefit to the estate" doctrine regarding custodial services.[41] While this Court is not bound to follow any of these cases, the cases are instructive of the evolution of bankruptcy practice. We decline to upend decades of settled precedent in the bankruptcy courts absent a clear and compelling legal reason to do so.

In conclusion, the language of § 543 clearly circumscribes the actions of superseded custodians to those which are necessary to preserve the assets of the

---

[40] *See Randolph & Randolph*, 190 U.S. at 535-36, 23 S. Ct. at 711.

[41] *See, e.g., In re Pris-mm, LLC*, No. 08-16398-RAG, 2009 WL 2924166, at *3 (Bankr. D. Md. Jul. 31, 2009); *In re Lake Region Operating Corp.*, 238 B.R. 99, 102 (Bankr. M.D. Pa. 1999); *In re 245 Assocs.*, 188 B.R. 743, 748 (Bankr. S.D.N.Y. 1995); *In re American Motor Club, Inc.*, 125 B.R. 79, 81-82 (Bankr. E.D. N.Y. 1991); *In re Holden*, 101 B.R. 573, 576 (Bankr. N.D. Iowa 1989); *In re Kenval Mktg. Corp.*, 84 B.R. 32, 34 (Bankr. E.D. Pa. 1988); *In re Valley Isle Broadcasting, Ltd.*, 56 B.R. 505, 506 (Bankr. D. Hawaii 1985); *In re Jensen-Farley Pictures, Inc.*, 47 B.R. 557, 570-71 (Bankr. D. Utah 1985) (collecting cases that followed *Randolph* prior to enaction of Bankruptcy Code); *In re Marichal-Agosto, Inc.*, 12 B.R. 891, 894 (Bankr. N.Y. 1981).

estate once a bankruptcy petition has been filed. Earwood cannot demonstrate that opposing the bankruptcy is an administrative expense to which he is entitled. Moreover, given our prior cases interpreting "actual" and "necessary" as the terms are used in the Bankruptcy Code, the Supreme Court precedent establishing pre-Code practice regarding superseded custodians, the legislative history of § 503(b)(3)(E), and the nearly uniform practice of the bankruptcy courts before and after the passage of the Bankruptcy Code, this Court would be predicted to interpret § 503(b)(3)(E) to require a "benefit to the estate" when awarding administrative expenses to a superseded custodian. Because the bankruptcy court explicitly refused to consider these standards when approving Earwood's compensation, the court committed legal error in approving the Compromise Settlement.

## V.

Regardless of the bankruptcy court's errors, Earwood argues that the real issue is not whether the bankruptcy court properly applied the law, but whether it abused its discretion by approving the Compromise Settlement that the court ultimately found to be in the best interests of the estate.

When reviewing a bankruptcy court's approval of a compromise settlement, the appellate court should ensure that the compromise settlement is "'fair and equitable' and 'in the best interest of the estate.'" *In re Jackson Brewing Co.*[42] In making this determination we acknowledge that "[a] bankruptcy court is ordinarily in the best position, as the trial court and as the ongoing supervisory court for the bankruptcy proceeding, to determine whether a compromise is in the best interest of the estate and 'fair and equitable.'" *In re*

---

[42] 624 F.2d 599, 602 (5th Cir. 1980) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S. Ct. 1157, 1163 (1968) ("TMT Trailer")).

*Emerald Oil Co.*[43] Nevertheless, a bankruptcy court abuses its discretion when it bases its decision on legally incorrect principles.[44]

Here, the bankruptcy court dictated the terms of the Compromise Settlement to the parties and specifically stated that it would only allow a settlement that included compensation to Earwood for his opposition to the bankruptcy. The bankruptcy court also refused to apply a "benefit to the estate" analysis regarding Earwood's services. In both pronouncements, the bankruptcy court erred as a matter of law. Accordingly, the bankruptcy court abused its discretion when it approved the Compromise Settlement.

## VI.

The district court's order affirming the bankruptcy court's orders which approved the Compromise Settlement is VACATED. Similarly, the bankruptcy court's orders are REVERSED and the case is REMANDED to the bankruptcy court for further proceedings.

---

[43] 807 F.2d 1234, 1239 (5th Cir. 1987) (citing *TMT Trailer*, 390 U.S. at 432, 88 S. Ct. at 1163).

[44] *See id.* (compromise agreement not "fair and equitable" when claim against the estate likely has no basis in law); *see also Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 384 (5th Cir. 2008) (holding that a lower court abuses its discretion "'when it makes an error of law'") (quoting *In re Superior Crewboats, Inc.*, 374 F.3d 330, 334 (5th Cir. 2004)).