RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0126p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

IN RE: KEITH BRADLEY KRAMER,

*Debtor.*

───────────────────────────────────────

SAID A. TALEB,

*Appellant,*

*v.*

MILLER, CANFIELD, PADDOCK & STONE, P.L.C. and
WENDY TURNER LEWIS, Trustee,

*Appellees.*

No. 20-2273

IN RE: KAY BEE KAY PROPERTIES,

*Debtor.*

───────────────────────────────────────

SAID A. TALEB,

*Appellant,*

*v.*

STUART A. GOLD, TRUSTEE,

*Appellee.*

No. 21-1017

Appeal from the United States District Court for the Eastern District of Michigan at Detroit;
Nos. 2:20-cv-10152; 2:20-cv-10950—Stephen J. Murphy, III, District Judge.

United States Bankruptcy Court for Eastern District of Michigan at Detroit;
Nos. 2:15-ap-04745; 2:15-bk-46671; 2:15-bk-46666—Thomas J. Tucker, Bankruptcy Judge.

Argued: October 26, 2022

Decided and Filed: June 16, 2023

Before: MOORE, CLAY, and NALBANDIAN, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Said A. Taleb, Dearborn, Michigan, in pro per. Robert A. Peurach, BERNARDI, RONAYNE & GLUSAC P.C., Plymouth, Michigan, for Appellee Wendy Turner Lewis. Ronald A. Spinner, MILLER, CANFIELD, PADDOCK AND STONE, P.L.C., Detroit, Michigan, for Appellee Miller, Canfield, Paddock and Stone. Elias T. Majoros, GOLD, LANGE, MAJOROS & SMALARZ, P.C., Southfield, Michigan, for Appellee Stuart A. Gold. **ON BRIEF:** Said A. Taleb, Dearborn, Michigan, in pro per. Robert A. Peurach, BERNARDI, RONAYNE & GLUSAC P.C., Plymouth, Michigan, Ronald A. Spinner, Steven A. Roach, Ronald A. Spinner, MILLER, CANFIELD, PADDOCK AND STONE, P.L.C., Detroit, Michigan, for Appellees in 20-2273. Elias T. Majoros, John C. Lange, GOLD, LANGE, MAJOROS & SMALARZ, P.C., Southfield, Michigan, for Appellee in 21-1017.

NALBANDIAN, J., delivered the opinion of the court, in which MOORE and CLAY, JJ., joined, except as to Part III.B.3. MOORE J. (pp. 20–31), delivered the opinion of the court, in which CLAY, J., joined, as to Part III.B.3.

———————————

**OPINION**

———————————

NALBANDIAN, Circuit Judge, writing for the majority, except as to Part III.B.3. Said Taleb was a creditor in two related bankruptcy cases. Neither case gave Taleb what he wanted. So he appealed both bankruptcy cases to the district court, which dismissed his claims. Taleb now appeals to us. He argues that the district court improperly dismissed his claims as constitutionally and equitably moot. Outside of his forfeited claims, we agree with Taleb. So we reverse and remand to the district court.

**I.**

Until 2011, Said Taleb worked for Keith Kramer as Vice President and General Counsel of Kramer's real estate business in Michigan. Business relations soured when Kramer falsely accused Taleb of embezzlement and forgery. After arbitration, Taleb received a judgment for almost $800,000 jointly and severally against Kramer and Kramer's business.

But Taleb couldn't cash in. That's because soon after arbitration Kramer and Kramer's business separately filed for Chapter 11 bankruptcy. Both Chapter 11 reorganization

bankruptcies failed, and they were recategorized as Chapter 7 liquidation cases. The heart of the present appeal is that Taleb, with an unsecured claim, failed to recover what he thinks is a satisfactory amount in either bankruptcy case.

We'll lay out the background of each bankruptcy case separately.

**A. Kramer's Personal Bankruptcy Estate**

To recover the arbitration judgment, Taleb made a non-priority claim for almost $800,000 in Kramer's personal bankruptcy.[1] The law firm Miller, Canfield, Paddock & Stone PLC ("Miller Canfield") represented Taleb in the initial confirmation of the arbitration award in state court and in Kramer's personal-bankruptcy proceedings. But Taleb soon stopped paying Miller Canfield. With no one to pick up the tab, Miller Canfield stopped representing Taleb.

But Miller Canfield didn't let Taleb off the hook. The firm wanted Taleb to pay its fees for its services thus far—fees that Taleb had refused to pay out of his own pocket. So Miller Canfield obtained an attorney's lien[2] on Taleb's claim in Kramer's bankruptcy case. In a Michigan state-court proceeding not before us, the state court ordered Kramer's bankruptcy estate to pay Miller Canfield its fees out of Taleb's creditor distribution, with any leftover amount to be held in Miller Canfield's IOLTA "pending further order" of the state court.

After a series of distributions, the trustee of the Kramer bankruptcy estate, Wendy Lewis, proposed that the estate pay about $230,000 of Taleb's almost $800,000 arbitration judgment. Taleb objected to Lewis's final report and fee application, Lewis's request for fees and expenses, and Lewis's counsel's fee request. Over Taleb's objections, the bankruptcy court approved the distribution and fee applications. So Lewis distributed all of Taleb's claim to Miller Canfield under the Michigan order, with any remaining funds after Miller Canfield paid itself to be held in the IOLTA.

---

[1]Taleb is one of five creditors who received a final distribution in Kramer's bankruptcy case.

[2]*See Bennett v. Weitz*, 559 N.W.2d 354, 355 (Mich. Ct. App. 1996) (explaining attorney's liens in Michigan). Miller Canfield's lien was for $94,586.16, but the firm claimed that Taleb owed it $220,519.00.

Taleb filed a notice of appeal to the district court within fourteen days as Federal Rule of Bankruptcy Procedure 8002(a)(1) requires.  The notice requested that the court review three bankruptcy court orders: (1) the order that overruled Taleb's objection to Lewis's final report and application for final compensation and reimbursement; (2) the order that granted Lewis's fees and expenses; and (3) the order that granted Lewis's attorneys their final application for fees and expenses.  Taleb listed his own new counsel (not Miller Canfield), Lewis's attorney (Dakmak Peurach P.C.), Kramer, and himself as the "parties to the Judgment."  (Lewis R. 1, First Notice, PageID 2–3.)  Notably, he didn't list Lewis as a party in this notice of appeal.

Although his notice was timely, Taleb did not file his appeal on the official form—Official Form 417A.  The bankruptcy court told Taleb to refile his appeal on the official form within another fourteen days from the date of the order to refile.  That order told Taleb to file "the most current and correct official form in its entirety[.]"  (Lewis R. 1, First Notice, PageID 15–16.)  Taleb then filed his notice on Official Form 417A, classifying this second notice as his "Amended Notice of Appeal."  (Lewis R. 6, Record, PageID 59; *see id.* at 54–63.)  That second notice fell outside the original fourteen-day timeline but within the time granted by the bankruptcy court to refile.[3]

Taleb's second notice dropped issues and added parties.  He limited the district court's review to the order overruling his objections to Lewis's final report and application for final compensation and reimbursement.  And in doing so, his second notice dropped the fee issues involving Lewis and her counsel.  Next, Taleb added Miller Canfield and Lewis as appellees.[4]

---

[3]Taleb had fourteen days to file his appeal from the date of the order to be appealed.  *See* Fed. R. Bankr. P. 8002(a)(1).  Taleb filed his first notice on January 20, 2020, within fourteen days of the orders he was appealing.  But the bankruptcy court's January 21 order to refile on the official form allowed Taleb another fourteen days to refile.  Taleb filed his second notice on February 4, within fourteen days of the bankruptcy court's order.

[4]In his briefing filed after the second notice, Taleb asked the district court to review the bankruptcy court's fee orders, or alternatively, to conduct an evidentiary hearing about the reasonableness of the awarded fees.  But Taleb didn't list these issues when appealing to the district court.  So, as we will explain, he forfeited these claims. *See In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 936 n.6 (6th Cir. 2014) (explaining that parties forfeit issues that they do not properly raise on appeal).

In the meantime, the bankruptcy court administered Kramer's entire estate because Taleb didn't obtain a stay pending appeal. The bankruptcy court discharged Lewis and closed out the case. On that basis, Lewis and Miller Canfield jointly moved to dismiss Taleb's appeal before the district court as both constitutionally and equitably moot.

The district court treated the initial notice of appeal as operative because Taleb hadn't asked for an extension, nor had he filed the second notice within the original fourteen-day timeline as required by Federal Rule of Bankruptcy Procedure 8002(a)(1). The district court did not address the bankruptcy court's order to refile, maybe because Taleb had not designated it as a relevant document on appeal. Treating the initial notice as operative, the district court dismissed Miller Canfield from the appeal because Taleb had not listed Miller Canfield as an appellee in that notice.

The district court next considered whether to dismiss the appeal against Lewis. Turning to the substantive issues in the first notice of appeal, the district court first noted that Taleb had failed to list Lewis's attorneys as parties to the appeal. So the district court determined that Taleb's appeal of the order granting Lewis's attorneys' final application for fees and expenses was constitutionally moot. Second, the district court held that Taleb's appeal of Lewis's final report and application for final compensation and reimbursement was constitutionally moot because Taleb had failed to seek a stay in the bankruptcy court. On the third issue—Taleb's appeal of the order granting Lewis's fees and expenses—the district court determined that while the issue was constitutionally ripe it was equitably moot based on the court's application of our three-factor equitable mootness test. Taleb timely appealed to this Court.

**B. The Business's Bankruptcy Estate**

We now turn to the second bankruptcy involving Kramer's business. Stuart Gold served as trustee of this bankruptcy. Taleb made a claim[5] for almost the entire $800,000 arbitration judgment in this bankruptcy case too. In Gold's final report for the business's bankruptcy, he

---

[5]Taleb was one of six creditors in this bankruptcy proceeding.

proposed paying Taleb about $9,000. The bankruptcy court approved that final report, discharged Gold, and closed the Chapter 7 case.

Taleb then appealed three bankruptcy court orders to the district court: (1) the order overruling Taleb's objection to Gold's final report and application for final compensation and reimbursement; (2) the order granting Gold's counsel[6] attorney's fees and expenses; and (3) the order granting Gold's compensation and reimbursement for expenses. Taleb never sought a stay in the bankruptcy estate, so the bankruptcy court closed out the case and discharged Gold as trustee. *See In re Kay Bee Kay Properties, LLC*, 618 B.R. 486, 488, 493 (Bankr. E.D. Mich. 2020). And Gold moved to dismiss Taleb's appeal as both constitutionally and equitably moot.

The district court evaluated the three issues Taleb raised on appeal: (1) Taleb's objection to the order granting attorney's fees to Gold's counsel; (2) Taleb's objection to Gold's final report and application for final compensation and reimbursement; and (3) Taleb's objection to the granting of Gold's fees and expenses. On the first issue, the district court held that Taleb's appeal was "constitutionally moot because" Gold's counsel was "an entity that is not a party to the appeal." (Gold R. 7, Order, at 5.) And, the district court explained, it did not have the "power to compel non-parties to return funds." (Gold R. 7, Order, at 5 (quoting *Pookrum v. Bank of Am., N.A.*, 512 B.R. 781, 785 (D. Md. 2014).)

Turning to Taleb's next issue on appeal—his objection to Gold's final report and application for final compensation and reimbursement—the district court ruled that Taleb's appeal was constitutionally moot because it could not "offer any effective relief to [Taleb] because [Taleb] never obtained a stay." (Gold R. 7, Order, at 5–6.)

Finally, the district court held that Taleb's third issue on appeal, the objection to the order granting Gold's fees and expenses, was constitutionally ripe but equitably moot because each of the equitable mootness factors weighed against Taleb. Taleb timely appealed to this Court.

---

[6]Gold's counsel was Gold, Lange & Majoros, P.C.

**II.**

When an appeal from a bankruptcy court comes to us via a district court decision, "this Court reviews the bankruptcy court's order directly, and gives no deference to the district court's decision." *McMillan v. LTV Steel, Inc.*, 555 F.3d 218, 225 (6th Cir. 2009). And we review the bankruptcy court's application of the Bankruptcy Code to a particular plan de novo. *Harper v. The Oversight Comm.* (*In re Conco, Inc.*), 855 F.3d 703, 709 (6th Cir. 2017).

We review all jurisdictional issues and equitable mootness determinations de novo. *See Gordon Sel-Way, Inc. v. United States* (*In re Gordon Sel-Way, Inc.*), 270 F.3d 280, 284 (6th Cir. 2001); *Ochadleus v. City of Detroit* (*In re City of Detroit*), 838 F.3d 792, 798 (6th Cir. 2016). And we review the granting of a trustee's fees and expenses for abuse of discretion. *Boddy v. U.S. Bankr. Ct.* (*In re Boddy*), 950 F.2d 334, 336 (6th Cir. 1991).

**III.**

Taleb raises four issues in his appeal based on Kramer's personal bankruptcy estate: (1) Whether the district court erred in holding that the second notice was untimely; (2) Whether the district court erred in holding that Lewis's counsel was not a party to the appeal; (3) Whether the district court erred in holding that Taleb's objection to Lewis's final report and application for compensation and reimbursement is constitutionally moot; and (4) Whether the district court erred in holding that Taleb's appeal of the order granting Lewis's fees and expenses is equitably moot.

And Taleb raises three issues in his appeal of the business's bankruptcy estate: (1) Whether the district court erred in holding that Gold's counsel was not a party to the appeal; (2) Whether Taleb's objection to Gold's final report and application for compensation and reimbursement is constitutionally moot; and (3) Whether the district court erred in holding that Taleb's objection to the order granting Gold's fees and expenses is equitably moot. We'll address each in turn.

## A. Appeal of Orders in Kramer's Personal Bankruptcy Estate

### 1. Notices of Appeal

The district court held that only the first notice was timely and declined to consider the second notice. Taleb argues that this was error.

A bankruptcy notice must be filed "within 14 days after entry of the judgment, order, or decree being appealed." Fed. R. Bankr. P. 8002(a)(1). That notice must "(A) conform substantially to the appropriate Official Form; (B) be accompanied by the judgment, order, or decree, or the part of it, being appealed; and (C) be accompanied by the prescribed fee." Fed. R. Bankr. P. 8003(a)(3).

Taleb filed his first notice within fourteen days of the order he was seeking to appeal. A day later the bankruptcy court instructed Taleb to refile his notice in compliance with Official Form 417A, the appropriate form under Federal Rule of Bankruptcy Procedure 8003(a)(3) for bankruptcy appeals.[7]

> The bankruptcy court's instructions to Taleb to refile his notice stated:
>
> IT IS ORDERED THAT the above named [] file the most current and correct official form in its entirety, no later than fourteen (14) days from the date of the entry of this order.
>
> IT IS FURTHER ORDERED THAT if the [individual] fails to timely file the most current and correct official form, the pleading may be stricken or this case may be dismissed without a hearing.

(Lewis R. 1, First Notice, PageID 15–16.) Under this order, the bankruptcy court told Taleb that he had fourteen days from the date of the order to file a second notice that complied with Official Form 417A. Taleb filed his second notice within that time.

---

[7]The bankruptcy court could order Taleb to refile under 11 U.S.C. § 105(a), which explains that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." *See also In re Orrison*, 343 B.R. 906, 907 (Bankr. N.D. Ind. 2006) ("Because this form did not correspond with the official form, the court issued an order requiring the debtors to file an amended petition using the official form.").

The district court didn't acknowledge that the bankruptcy court had permitted Taleb to refile a notice on the correct form.  So the district court considered only the first notice.  Under these circumstances, that was error.

Since the second notice was timely filed and served under the bankruptcy court's instructions, we must ask whether the district court could have considered the first notice at all—that is, whether the second notice supplanted the first entirely or just supplemented it.  We've never decided whether, as a categorical matter, an amended notice in the bankruptcy context replaces the original.  But we don't have to decide that issue today.

Here, the bankruptcy court gave Taleb another fourteen days to file a single notice on Official Form 417A.  The order instructed Taleb to "file the most current and correct official form in its entirety[.]"  (Lewis R. 1, First Notice, PageID 15–16.)  No one is disputing that the bankruptcy court had the discretion to reject Taleb's original notice and order him to refile a new one.  *See* 11 U.S.C. § 105(a).  And while exercising its discretion, the bankruptcy court didn't hide the ball.  It told Taleb that he had to file a notice that constituted "the most current and correct form in its entirety[.]"  (Lewis R. 1, First Notice, PageID 15–16.)  So consistent with what the bankruptcy court ordered, we will treat Taleb's second notice of appeal as the operative one.

First, the claims in the second notice of appeal.  Taleb's second notice listed only one order for appeal: the order denying his objection to Lewis's final report and fee application.  Under Federal Rule of Bankruptcy Procedure 8003(a)(3)(B), a notice of appeal must include the order being appealed.  And Taleb appended only the order denying his objection to Lewis's final report and fee application in his second notice.  So that's the only issue that was properly before the district court. *Cf. United States v. Glover*, 242 F.3d 333, 335 (6th Cir. 2001) (explaining that designating the judgment for appeal "is both a mandatory and a jurisdictional prerequisite" under Federal Rule of Appellate Procedure 3(c)(1), the parallel provision to Federal Rule of Bankruptcy Procedure 8003(a)(3)(B) (citation omitted)).  On that basis, the district court was wrong to review the other two orders listed in the first notice (but not the second) relating to the order granting Lewis's fees and expenses and Lewis's counsel's fees and expenses.

Second, the parties. Under Federal Rule of Bankruptcy Procedure 8003(a)(3)(A) and the corresponding Official Form 417A, a party appealing a bankruptcy order must "[l]ist all parties to the judgment, order, or decree appealed from" in the notice.  Taleb's second notice listed these parties: Kramer, the U.S. Trustee and its attorney (not relevant here), Lewis, Robert Peurach (one of the attorneys at the firm representing Lewis), Miller Canfield, and Miller Canfield's attorney.  These are the parties we'll consider on appeal when evaluating Lewis's final report and fee application.

Because Taleb did not list the granting of fees and expenses to Lewis and her counsel as orders for appeal in Kramer's personal bankruptcy estate, we don't need to consider two of the issues Taleb raised before us:  whether Lewis's counsel was a party to the appeal and whether the district court erred in holding that Lewis's application for fees and expenses was equitably moot.  *See* Fed. R. Bankr. P. 8003(a)(3).  That leaves us with one other claim—the objection to Lewis's final report and fee application.

## 2.  Lewis's Final Report and Fee Application

The district court held that Taleb's objection to Lewis's final report and fee application was constitutionally moot.  We disagree.

Constitutional mootness implicates Article III because we only have jurisdiction to hear cases or controversies, and "[w]e do not have the power to adjudicate disputes that are moot." *Hanrahan v. Mohr*, 905 F.3d 947, 960 (6th Cir. 2018).  A "case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969).  We ask whether it would "make a difference to the legal interests of the parties" if we granted the relief sought.  *Hanrahan*, 905 F.3d at 960 (citation omitted).

If a ruling from us would not affect the legal interests of the parties, an issue is constitutionally moot.  *See Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 458 (6th Cir. 2004).  Because constitutional mootness goes to our subject-matter jurisdiction under Article III, "we have a continuing obligation to enquire whether there is a present controversy as to which effective relief can be granted."  *Id.* (citation and quotation marks

omitted). And when an issue is constitutionally moot, we don't have jurisdiction to consider it. *Id.*

The district court said that the appeal of Lewis's final report and application for compensation and reimbursement was constitutionally moot because Taleb "never obtained a stay." (Lewis R. 21, Order, at 8.) Without a stay, the bankruptcy court had discharged Lewis and closed the case. The district court explained that this precluded any granting of effective relief on appeal.[8]

The problem with the district court's reasoning is that the district court has the authority to reverse a bankruptcy court order. As the district court itself explained with regard to a different issue, "bankruptcy courts routinely reopen cases to administer" funds based on reversals or other changes to the bankruptcy. (Lewis R. 21, Order, at 9.) So even though Taleb had not obtained a stay, the district court could have granted effective relief—i.e., order the bankruptcy court to reopen the case—had it decided that Taleb's objections to the final report and application for compensation and reimbursement had merit. *See* 11 U.S.C. § 350(b) ("A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."); *Taunt v. Vining* (*In re M.T.G., Inc.*), 403 F.3d 410, 415 (6th Cir. 2005) ("The district court has the authority to reverse the bankruptcy court's decisions."); *Sunshine Heifers, LLC v. Citizens First Bank* (*In re Purdy*), 763 F.3d 513, 516 (6th Cir. 2014) (reversing "the bankruptcy court's decision" and remanding to the bankruptcy court "for further proceedings consistent with this opinion").

Failing to seek a stay does not render an issue constitutionally moot. *Cf. Curreys of Nebraska, Inc. v. United Producers, Inc.* (*In re United Producers, Inc.*), 526 F.3d 942, 948 (6th Cir. 2008) (explaining that failure to seek a stay doesn't even render an issue equitably moot). Constitutional mootness goes to the granting of effective relief. If the district court couldn't change the outcome or grant the requested relief, then there would be a constitutional mootness

---

[8]The district court appeared in part to rely on a case addressing statutory mootness under 11 U.S.C. § 363(m). Statutory mootness is a distinct principle. *See Made in Detroit, Inc. v. Off. Comm. of Unsecured Creditors of Made in Detroit, Inc.* (*In re Made in Detroit, Inc.*), 414 F.3d 576, 581 (6th Cir. 2005) (discussing and applying statutory mootness doctrine).

problem.  But here the district court could have granted effective relief, so Taleb's objection to Lewis's final report and application for compensation and reimbursement is not constitutionally moot.

Because the district court dismissed the case preliminarily, it never considered the merits on appeal.  So the best course now is to remand for the district court to consider Taleb's preserved objections.  *See Citizens Coal Council v. E.P.A.*, 447 F.3d 879, 905 (6th Cir. 2006) (en banc) (explaining that we rarely rule "on grounds not raised by the parties").

**B.  Appeal of Orders in Kramer's Business's Bankruptcy Estate**

**1.  Gold's Counsel's Fees**

The district court held that Taleb's objection to the order granting the fees and expenses of Gold's counsel was constitutionally moot because Taleb didn't list Gold, Lange & Majoros, P.C. as a party in his notice to the district court.  Taleb argues that failure to list an entity in a notice does not categorically prevent it from being a party on appeal.  We agree.

Our Circuit has never addressed whether failure to list an entity as an appellee in a bankruptcy petition under Federal Rule of Bankruptcy Procedure 8003(a) precludes that entity from being a party to the appeal.  But we have said that failure to list an appellee in a notice of appeal is not fatal to an appellant's claim under Federal Rule of Appellate Procedure 3(c) because that requirement is not baked into the rule.  *Int'l Union, United Auto. Aerospace & Agric. Implement Workers of Am. v. United Screw & Bolt Corp.*, 941 F.2d 466, 471 (6th Cir. 1991).  And, in the past, we have treated the Federal Bankruptcy Rules similarly to the Federal Rules of Appellate Procedure for purposes of jurisdictional effect.  *Suhar v. Burns* (*In re Burns*), 322 F.3d 421, 430 (6th Cir. 2003) (treating the timeliness requirement of Federal Rule of Bankruptcy Procedure 8002 like the timeliness requirement of Federal Rule of Appellate Procedure 4 for purposes of jurisdictional effect).

But this case presents a slight twist because the rules governing notices of appeal under the Federal Rules of Appellate Procedure and under the Federal Bankruptcy Rules "differ mysteriously" in this context.  *Fadayiro v. Ameriquest Mortg. Co.*, 371 F.3d 920, 921 (7th Cir.

2004).  Like Rule 3 of the Federal Rules of Appellate Procedure, Bankruptcy Rule 8003 does not, per se, require that a notice list the *appellees*.  What Rule 8003(a)(3)(A) does require, however, is that the notice "conform substantially to the appropriate Official Form."  In turn, Official Form 417A has a spot for the appellant to list all parties to the judgment.  So unlike in the Federal Rule of Appellate Procedure context, there is at least some requirement that the appellees be listed—at least on the Form.

We believe the key, though, to the issue before us is that Rule 8003(a)(3)(A) requires only *substantial conformity* with Official Form 417A.  And because only substantial conformity to the form is required, we can look elsewhere in the notice of appeal to determine whether Taleb sufficiently named "all parties to the judgment, order, or decree appealed."  In other words, we won't confine our review to one line on a form.  *See Fadayiro*, 371 F.3d at 923 ("The very phrase ["conform substantially"] indicates that literal compliance with formal requirements is not indispensable to the administration of the bankruptcy system[.]").

In this case, Taleb's notice substantially conforms.  Taleb attached the order granting attorney's fees to Gold's counsel to his notice.  And that order, which listed Gold's counsel, pertained only to Gold's counsel.  Further, Taleb's notice also listed Gold himself as a party to the appeal.  So Gold as trustee would have known that there was a challenge to his counsel's attorney's fees and expenses.  And Gold, an attorney himself, was represented by his own firm. He is the "Gold" in Gold, Lange & Majoros, P.C. All this to say that Taleb's notice would have put Gold's counsel on sufficient notice that it was a party to the appeal, even though the firm was not specifically listed.  *See Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 318 (1988) ("The specificity requirement of Rule 3(c) is met only by some designation that gives fair notice of the specific individual or entity seeking to appeal."); *see also Fadayiro*, 371 F.3d at 923 (explaining that "strict and literal compliance" with the bankruptcy notice-of-appeal rule should not "be deemed jurisdictional" when "[a]ll the information required by" the rule is "in fact supplied by the appellant though not in the format prescribed by the form to which the rule refers").  We hold that Taleb's claim on Gold's counsel's fees is not constitutionally moot.  So we remand for the district court to evaluate the merits of Taleb's objections to the bankruptcy court's order.

**2. Gold's Final Report and Fee Application**

Next, Taleb argues that the district court erred in holding that Taleb's objection to Gold's final report and application for trustee compensation and reimbursement was constitutionally moot. Because Taleb did not seek a stay in the bankruptcy court, the district court ruled that this objection was constitutionally moot. During the pendency of the appeal, Gold "ultimately administered the entire bankruptcy estate, the bankruptcy court discharged [Gold], and then closed the case." (Gold R. 7, Order, at 6.) So, the district court said, "the appeal becomes moot because a reviewing court cannot fashion a remedy[.]" (Gold R. 7, Order, at 6 (quoting *Reynolds v. Bailey* (*In re Reynolds*), 455 B.R. 312, 319–20 (D. Mass. 2011)).)

As we covered above, failing to seek a stay does not render an issue constitutionally moot. *See supra* Part III.A.2. And on its own, failing to seek a stay cannot even render an issue equitably moot. Instead, constitutional mootness goes to the granting of effective relief. Because the district court could have changed the outcome by granting Taleb's requested relief, there is no constitutional mootness problem here. Again, the appropriate course is a remand for the district court to consider the merits of Taleb's objections on this issue.

**3. Gold's Fees and Expenses**

Taleb's third argument is that the district court erred in holding that Taleb's objection to Gold's fees and expenses was equitably moot. On this issue, Judge Moore's opinion controls. The majority on this point rejects the application of equitable mootness to the Chapter 7 context. I don't think we need to do that today—because even if the doctrine applied, the claim would not be equitably moot—and I express my own thoughts here.

Equitable mootness "protect[s] parties' settled expectations and the ability of a debtor to emerge from bankruptcy." *In re United Producers, Inc.*, 526 F.3d at 947. Under the equitable mootness doctrine, sometimes a reviewing court will refuse to disturb the merits of a bankruptcy court's decision even though it has jurisdiction because it would be imprudent to do so. *See In re City of Detroit*, 838 F.3d at 798 ("More akin to waiver or forfeiture (or perhaps estoppel) than to conventional mootness, equitable mootness is 'grounded in the notion that, with the passage of time after a judgment in equity and implementation of that judgment, effective relief on appeal

becomes impractical, imprudent, and therefore inequitable.'" (quoting *In re United Producers, Inc.*, 526 F.3d at 947)); *Manges v. Seattle-First Nat'l Bank* (*In re Manges*), 29 F.3d 1034, 1039 (5th Cir. 1994) (explaining that equitable mootness "is a recognition by the appellate courts that there is a point beyond which they cannot order fundamental changes in reorganization actions").

At heart, "equitable mootness is not concerned with the court's ability or inability to grant relief; it is concerned with protecting the good faith reliance interests created by implementation of the bankruptcy plan from being undone afterwards." *In re City of Detroit*, 838 F.3d at 798.

The Sixth Circuit has adopted a three-factor test from the Fifth Circuit to determine whether certain types of bankruptcy cases are equitably moot.[9] *See Bank of Montreal v. Off. Comm. of Unsecured Creditors* (*In re Am. HomePatient, Inc.*), 420 F.3d 559, 563–64 (6th Cir. 2005). We ask "(1) whether a stay has been obtained [in the bankruptcy court]; (2) whether the [bankruptcy] plan has been 'substantially consummated';[10] and (3) whether the relief requested would affect either the rights of parties not before the court or the success of the [bankruptcy] plan." *In re United Producers, Inc.*, 526 F.3d at 947–48 (considering a Chapter 11 restructuring bankruptcy). No one factor is determinative, but the third carries the most weight in the equitable mootness analysis. *Id.* at 949.

---

[9]*See In re Manges*, 29 F.3d at 1039 (laying out the Fifth Circuit's three-part test for equitable mootness). Not all circuits adopt this analysis. *See In re Cont'l Airlines*, 91 F.3d 553, 560 (3d Cir. 1996) (laying out the Third Circuit's five-factor test to determine whether an issue is equitably moot); *R² Invs. LDC v. Charter Commc'ns, Inc.* (*In re Charter Commc'ns, Inc.*), 691 F.3d 476, 482 (2d Cir. 2012) (explaining that the Second Circuit had adopted a presumption and burden-shifting test for equitable mootness); *Divetrain, LLC v. Kozel* (*In re Abengoa Bioenergy Biomass of Kan., LLC*), 958 F.3d 949, 957–60 (10th Cir. 2020) (looking to six factors to determine whether equitable mootness applies); *FishDish, LLP v. VeroBlue Farms USA, Inc.* (*In re VeroBlue Farms USA, Inc.*), 6 F.4th 880, 889 (8th Cir. 2021) (collecting cases) (declining to adopt a specific multi-factor test for equitable mootness).

[10]The language of "substantial consummation" stems from the statutory language governing Chapter 11 bankruptcies. 11 U.S.C. § 1101(2). And that makes sense because courts originally applied equitable mootness only to Chapter 11 restructuring bankruptcy cases. *See In re City of Detroit*, 838 F.3d at 799, 804 n.11.

Under 11 U.S.C. § 1101(2), "substantial consummation" means the "(A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan." 11 U.S.C. § 1101(2). So originally factor two asked how far along a bankruptcy reorganization plan was under Chapter 11. The further along in the reorganization plan, the more likely the issue would be equitably moot. *See In re Am. HomePatient, Inc.*, 420 F.3d at 563; *City of Covington v. Covington Landing Ltd. P'ship*, 71 F.3d 1221, 1226 (6th Cir. 1995); *In re United Producers, Inc.*, 526 F.3d at 948.

We have applied equitable mootness doctrine in the Chapter 9 and Chapter 11 reorganization contexts but have not decided whether equitable mootness also applies in a Chapter 7 bankruptcy case like Taleb's. *See In re City of Detroit*, 838 F.3d at 800–01, 803, 805. Other circuits have applied equitable mootness to Chapter 7—with only one finding a Chapter 7 bankruptcy to be equitably moot. *See Drawbridge Special Opportunities Fund, L.P. v. Shawnee Hills, Inc.* (*In re Shawnee Hills, Inc.*), 125 F. App'x 466, 469–70 (4th Cir. 2005) (holding that a Chapter 7 appeal was equitably moot); *Hicks, Muse & Co., Inc. v. Brandt* (*In re Healthco Int'l, Inc.*), 136 F.3d 45, 48–49 (1st Cir. 1998) (holding that a Chapter 7 appeal was not equitably moot); *Fitzgerald v. Namba* (*In re Fitzgerald*), 428 B.R. 872, 881–82 (B.A.P. 9th Cir. 2010) (deciding that a Chapter 7 bankruptcy was not equitably moot).[11]

Because money can almost always change hands with little disruption, the main rationale behind equitable mootness seems less applicable in a Chapter 7 case than in an ongoing reorganization plan under Chapters 9 or 11. In other words, any reversal of a Chapter 7 liquidation would likely be less difficult than the undoing of a Chapter 9 or 11 plan from the get-go. In this sense, it is similar to any other money judgment that is not stayed on appeal but is still not moot. *Madeline Marie Nursing Homes No. 1 & No. 2*, 694 F.2d at 464 (explaining that because money can always change hands a stay is not required when a money judgment is on appeal); *see In re Detroit*, 838 F.2d at 813 (Moore, J., dissenting) (explaining that equitable mootness has already crept into traditional money-judgment appeals in other circuits).

On the other hand, our circuit's momentum is moving in favor of equitable mootness's broad application. *See In re City of Detroit*, 838 F.3d at 800 n.6. We originally only applied equitable mootness in the Chapter 11 context. *City of Covington v. Covington Landing Ltd.*

---

[11]The Fifth Circuit, from whom we adopted the equitable mootness test, has analyzed Chapter 7 bankruptcy appeals under the equitable mootness framework, assuming (but not deciding whether) equitable mootness applies under Chapter 7. *See TNB Fin., Inc. v. James F. Parker Ints.* (*In re Grimland, Inc.*), 243 F.3d 228, 231, 232, & n.4 (5th Cir. 2001). It explained that "[i]t is certainly arguable that equitable mootness has no application to an appeal in a Chapter 7 liquidation" because equitable mootness "responds to the particular problems presented by the consummation of plans of reorganization under Chapter 11." *In re San Patricio Cnty. Cmty. Action Agency*, 575 F.3d 553, 558 (5th Cir. 2009) (citation and quotation marks omitted); *see id.* at 559 (explaining that the Fifth Circuit had (in an unpublished decision) previously held that a Chapter 7 bankruptcy was not equitably moot where "reversing the order would simply require one party to repay the other"). But it has declined to make a categorical statement that equitable mootness never applies in the Chapter 7 context.

*P'ship*, 71 F.3d 1221, 1226 (6th Cir. 1995).  And our equitable mootness test tracks the language of Chapter 11.  *See In re Am. HomePatient, Inc.*, 420 F.3d at 563.  But we didn't stop there.

We have since extended equitable mootness to Chapter 9 municipal reorganizations.  The application of our equitable mootness test to that context was, at least in one sense, like fitting a square peg in a round hole because factor two—whether a reorganization plan had been "substantially consummated"—came straight from the statutory language of Chapter 11.  *See In re City of Detroit*, 838 F.3d at 798.

But, we reasoned, although the second factor of the equitable mootness analysis originally tracked the statutory language governing Chapter 11 bankruptcies, the purpose behind equitable mootness remained the same, whether under Chapter 11 or Chapter 9:  "[T]o achieve finality in bankruptcy proceedings and to protect the good-faith reliance interests created by implementation of the bankruptcy plan."  *In re City of Detroit*, 838 F.3d at 803.  So adapting the second factor of the equitable mootness test to the Chapter 9 context, we explained that the second factor was not necessarily tied to § 1101(2)'s statutory definition and instead simply inquired into "the extent to which the plan ha[d] progressed."  *Id.* at 804 (alteration in original) (citation omitted) (explaining that "at conception" equitable mootness doctrine "did not require . . . any codified definitions or terms").

*In re City of Detroit*'s reasoning broadly unmoored factor two of the equitable mootness test from the statutory language of 11 U.S.C. § 1101(2).  In other words, under the reasoning of *In re City of Detroit*, the rationale of equitable mootness would apply as equally to the Chapter 7 context as it did to the Chapter 9 context.  *See* 838 F.3d at 801, 804 (explaining that the equitable mootness test "stand[s] on its own terms" in bankruptcy without reference to the Chapter 11 context and that other courts have applied it to the Chapter 7 context).  Our sister circuits who have opined on this issue have universally extended equitable mootness to Chapter 7 cases.  *See supra* p. 16.

With all that said, equitable mootness is a judicial doctrine with little to no textual support outside of Chapter 11.  *See In re Cont'l Airlines*, 91 F.3d 553, 567 (3d Cir. 1996) (en banc) (Alito, J., dissenting).  And Chapter 7 liquidation appeals look a lot more like a regular

appeal than the administration of a bankruptcy estate. That should caution us against the doctrine's expansion. *In re City of Detroit*, 838 F.3d at 813 (Moore, J., dissenting) (explaining that the expansion of equitable mootness outside the Chapter 11 context will make it "impossible to cabin because *all* final decisions of district courts create reliance interests and *all* appeals have the potential to upset those interests").

As I said above, I don't write for the majority here. But I don't think we need to decide whether equitable mootness broadly applies in the Chapter 7 context, because even if it did, this appeal is not equitably moot. That is because here, only professional fees are in dispute. And applying the equitable mootness test, other circuits have invariably found that, regardless of the type of bankruptcy at issue, challenges to professional fees are not equitably moot on appeal. *See, e.g.*, *Hilal v. Williams* (*In re Hilal*), 534 F.3d 498, 501 (5th Cir. 2008*)*; *U.S. Trustee v. The Off. Comm. of Equity Sec. Holders* (*In re Zenith Elecs. Corp.*), 329 F.3d 338, 346–47 (3d Cir. 2003); *Salomon v. Logan* (*In re Int'l Env't Dynamics, Inc.*), 718 F.2d 322, 325–26 (9th Cir. 1983); *Ullrich v. Welt* (*In re Nica Holdings, Inc.*), 810 F.3d 781, 787–88 (11th Cir. 2015); *In re Shawnee Hills, Inc.*, 125 F. App'x at 470. Taleb's case is a perfect example of why this outcome makes sense.

Regardless of how the other equitable mootness factors come out, the third factor—the most important one—works overwhelmingly in Taleb's (and all the other creditors') favor in this context. If Taleb prevailed and the bankruptcy court reduced Gold's fees after a hearing, then the result could only benefit and not harm the other creditors. Why? Because the excess amount that would result from a reduction in the trustee's fees would likely be distributed pro rata to the other creditors. *See* 11 U.S.C. § 326(a). On the other hand, if the bankruptcy court decided not to reduce Gold's fees, Gold would have to bear that cost. That's because Gold would be unable to recover attorney's fees in defending his fee award. *See Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 124 (2015) (explaining that under 11 U.S.C. § 330(a)(1) a bankruptcy court cannot "award attorney's fees for work performed in defending a fee application in court").

So any redistribution of Gold's fee award could only help and not hurt the other creditors in the bankruptcy case. Thus, Taleb's appeal of Gold's fees and expenses would not be equitably

moot regardless.  And consistent with what the other circuits have determined, this is likely to be true in any Chapter 7 case involving an appeal of professional fee awards.

Therefore, like Judge Moore's opinion, I would remand for the district court to consider the merits of Taleb's claim that Gold received fees and expenses that were too high for the work Gold performed as trustee.

## IV.

For all these reasons, we **REVERSE** and **REMAND** to the district court for further consideration.

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge, writing the majority opinion for part III.B.3. The district court dismissed Said Taleb's appeal of the bankruptcy court's order granting Gold's fees and expenses because it determined that the appeal of that issue was equitably moot. *Taleb v. Gold* (*In re Kay Bee Kay Props., LLC*), No. 2:20-CV-10950, 2020 WL 7626773, at *3–4 (E.D. Mich. Dec. 22, 2020). Review of Taleb's appeal challenging the district court's decision necessitates determining whether the equitable-mootness doctrine could properly have applied to his claim. The appeal before us requires grappling with the scope of the equitable-mootness doctrine, specifically whether a court of review can decline to consider the merits and bar the appeal of an order issued in a Chapter 7 liquidation bankruptcy.

As a federal court, we "have a strict duty to exercise the jurisdiction that is conferred upon [us] by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). Exercising our congressionally conferred jurisdiction is "a 'virtually unflagging obligation.'" *Id.* (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 821 (1976)). This obligation is deep-rooted and embedded in the core of American jurisprudence. Recent Supreme Court warnings that, "[j]ust as a court cannot apply its independent policy judgment to recognize a cause of action that Congress has denied, it cannot limit a cause of action that Congress has created merely because 'prudence' dictates," *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014) (citation omitted), have not deviated much from our first chief justice's statement that "[w]e have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given," *Cohens v. Virginia*, 19 U.S. 264, 404 (1821) (Marshall, C. J.). Thus, when addressing the scope of the equitable-mootness doctrine, "[t]he presumptive position remains that federal courts should hear and decide on the merits cases properly before them." *FishDish, LLP v. VeroBlue Farms USA, Inc.* (*In re VeroBlue Farms USA, Inc.*), 6 F.4th 880, 891 (8th Cir. 2021) (quoting *Samson Energy Res. Co., v. Semcrude, L.P.* (*In re Semcrude, L.P.*), 728 F.3d 314, 326 (3d Cir. 2013)) (applying presumption when considering equitable mootness).

"Unlike mootness in the constitutional sense, equitable mootness does not follow from Article III standing principles." *Curreys of Nebraska, Inc., v. United Producers, Inc.* (*In re United Producers, Inc.*), 526 F.3d 942, 947 (6th Cir. 2008). "Equitable mootness is not technically 'mootness'—constitutional or otherwise—but is instead 'a prudential doctrine.'" *Ochadleus v. City of Detroit* (*In re City of Detroit*), 838 F.3d 792, 798 (6th Cir. 2016) (quoting *United Steelworkers of Am. v. Ormet Corp.* (*In re Ormet Corp.*), 355 B.R. 37, 40–41 (S.D. Ohio 2006)). This prudential doctrine "permit[s] federal district courts and courts of appeals to refuse to entertain the merits of *live* bankruptcy appeals over which they indisputably possess statutory jurisdiction and in which they can plainly provide relief." *In re Cont'l Airlines*, 91 F.3d 553, 567 (3d Cir. 1996) (en banc) (Alito, J., dissenting) (emphasis added). The name—equitable mootness—is misleading because "[t]here is a big difference between *inability* to alter the outcome (real mootness) and *unwillingness* to alter the outcome ('equitable mootness')." *In re VeroBlue Farms USA, Inc.*, 6 F.4th at 888 (quoting *In re UNR Indus., Inc.*, 20 F.3d 766, 769 (7th Cir. 1994)). It is for this reason that Justice Alito dubbed equitable mootness a "curious doctrine." *In re Cont'l Airlines*, 91 F.3d at 567.[1]

When properly applied, equitable mootness may bar "appeals from bankruptcy confirmations in order to protect parties relying upon the successful confirmation of a bankruptcy plan from a drastic change after appeal." *In re United Producers, Inc.*, 526 F.3d at 947. *After* determining that the equitable-mootness doctrine can apply to the type of issue on appeal, courts then "weigh three factors: '(1) whether a stay has been obtained; (2) whether the plan has been "substantially consummated"; and (3) whether the relief requested would affect either the rights of parties not before the court or the success of the plan.'" *Id.* at 947–48 (quoting *City of Covington v. Covington Landing Ltd. P'ship*, 71 F.3d 1221, 1225 (6th Cir.

---

[1]Many have criticized the doctrine for a number of reasons, including its distortion of mootness, its apparent unconstitutionality, and its lack of efficacy. *See generally In re One2One Commc'ns, LLC*, 805 F.3d 428, 438–54 (3d Cir. 2015) (Krause, J., concurring); *In re City of Detroit*, 838 F.3d at 805–14 (Moore, J., dissenting). We also note that the Supreme Court may have recently indicated its position on equitable mootness when it explained that, irrespective of statutory mootness, an appeal in a bankruptcy case remains live so long as it remains possible for "a court to grant any effectual relief whatever to the prevailing party." *MOAC Mall Holdings LLC v. Transform Holdco LLC*, 143 S. Ct. 927, 934 (2023) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)). The unanimous opinion advised that "[o]ur cases disfavor these kinds of mootness arguments." *Id.* at 935.

1995)). Our focus today is on this first threshold issue—when can courts properly consider whether the doctrine of equitable mootness bars an appeal.

## I. OVERVIEW OF THE EQUITABLE-MOOTNESS DOCTRINE

We begin with a history of the equitable-mootness doctrine. The doctrine first emerged in *Trone v. Roberts Farms, Inc.* (*In re Roberts Farms, Inc.*), 652 F.2d 793 (9th Cir. 1981). There, the Ninth Circuit considered whether to dismiss as moot an appeal of three bankruptcy court orders, including a confirmation order of a plan of reorganization, in a Chapter 11 bankruptcy "on the ground . . . that the plan had been substantially carried out." *Id.* at 795. In a Chapter 11 bankruptcy, a bankruptcy court issues a confirmation order, which is a final order, to approve a proposed plan. 1 Collier on Bankruptcy ¶ 5.08 (16th ed. 2023); Caroline L. Rosiek, *Making Equitable Mootness Equal: The Need for A Uniform Approach to Appeals in the Context of Bankruptcy Reorganization Plans*, 57 Syracuse L. Rev. 685, 689–90 (2007); *see also* 7 Collier on Bankruptcy ¶ 1129.09.

Relying on the former Bankruptcy Rule 805,[2] which governed stays pending appeals regarding a sale of property, the Ninth Circuit explained that in the absence of a stay, the court was "faced with a situation where the plan of arrangement has been so far implemented that it is impossible to fashion effective relief for all concerned." *In re Roberts Farms, Inc.*, 652 F.2d at 797. That is because so "many intricate and involved transactions" including property transactions, "were contemplated by the [reorganization] plan . . . and stand *solely* upon the order confirming the plan . . . for court approval and confirmation of the transactions." *Id.* The court reasoned that it was therefore "inequitable for th[e] court to consider the merits of the appeal." *Id.* at 798.

Courts understand *In re Roberts Farms, Inc.* as "suggest[ing] that . . . [Former] Rule [805] embodied a broader policy that could be applied to bar appeals from an order confirming a

---

[2]Rule 805 read: "Unless an order approving a sale of property or issuance of a certificate of indebtedness is stayed pending appeal, the sale to a good faith purchaser or the issuance of a certificate to a good faith holder shall not be affected by the reversal or modification of such order on appeal, whether or not the purchaser or holder knows of the pendency of the appeal." *In re Roberts Farms*, 652 F.2d at 796 (quoting Fed. R. Bankr. P. 805 (1976)).

bankruptcy plan of reorganization where certain 'property transactions do not stand independently and apart from the plan of arrangement.'" *In re City of Detroit*, 838 F.3d at 807 (Moore, J., dissenting) (quoting 652 F.2d at 797). Justice Alito read *In re Roberts Farms, Inc.* to mean "that the challenge to the plan of reorganization in that case could not be entertained because no relief was practicable as a result of the many post-confirmation transactions that were irreversible due to this provision of former Rule 805." *In re Cont'l Airlines*, 91 F.3d at 569.

From there, courts and scholars have come to see "that the underlying purpose of the doctrine is to 'prevent[ ] a court from unscrambling *complex bankruptcy reorganizations* when the appealing party should have acted before the plan became extremely difficult to retract.'" *U.S. Tr. v. Official Comm. of Equity Sec. Holders* (*In re Zenith Elecs. Corp.*), 329 F.3d 338, 345 (3d Cir. 2003) (alteration in original) (emphasis added) (quoting *Nordhoff Invs. Inc. v. Zenith Elecs. Corp.*, 258 F.3d 180, 185 (3d Cir. 2001)); *see also In re One2One Commc'ns*, 805 F.3d at 438 (Krause, J., concurring) ("The doctrine was designed to be 'limited in scope and cautiously applied,' specifically in *highly complex cases* where limited relief was not feasible and upsetting a *reorganization* would cause substantial harm to numerous third parties." (emphasis added) (quoting *In re Cont'l Airlines*, 91 F.3d at 559 (majority opinion))); Tiffany Chang, *Equitable Mootness in the Second Circuit*, 31 S. Cal. Interdisc. L.J. 353, 358 (2022) ("The doctrine was designed to be expressly limited to *complex reorganizations with intricate transactions*." (emphasis added)).

One of the first courts to apply the doctrine, the Seventh Circuit, felt that "[s]everal provisions of the Bankruptcy Code of 1978 provide that courts should keep their hands off consummated transactions." *In re UNR Indus., Inc.*, 20 F.3d at 769. Those provisions, according to the panel, expressed a preference for "preserving interests bought and paid for in reliance on judicial decisions, and avoiding the pains that attend any effort to unscramble an egg," and thereby warranted an inquiry into "whether it is prudent to upset the plan of reorganization at [a] late date." *Id.* Still, however, the focus remained on reorganization plans. *See id.*; 7 Collier on Bankruptcy ¶ 1129.09 ("Traditionally, the equitable mootness doctrine has been applied only to appeals from orders confirming plans of reorganization in chapter 11."); *Tech. Lending Partners, LLC v. San Patricio Cnty. Cmty. Action Agency* (*In re San Patricio*

*Cnty. Cmty. Action Agency*), 575 F.3d 553, 558 (5th Cir. 2009) ("Equitable mootness normally arises where a Chapter 11 reorganization plan is at issue." (quoting *TNB Fin., Inc. v. James F. Parker Interests* (*In re Grimland, Inc.*), 243 F.3d 228, 231 n.4 (5th Cir. 2001))).  As Collier explained "[e]quitable mootness balances a court's power to immediately implement its order confirming a plan of reorganization against participants' rights to appeal errors made in that order.  The doctrine seeks to achieve this balance through examination of several factors affecting the parties and the reorganization."  7 Collier on Bankruptcy ¶ 1129.09.  "The doctrine responds 'to the particular problems presented by the consummation of plans of reorganization under Chapter 11,'" and "is often defined in relation to reorganization plans."  *In re San Patricio Cnty. Cmty. Action Agency*, 575 F.3d at 558 (quoting *In re Grimland, Inc.*, 243 F.3d at 231).

This circuit, consistent with the doctrine's underlying purpose and its aims, has applied equitable mootness to bar appeals *only* of confirmation orders of reorganization plans.  This court first encountered equitable mootness in *Bennett v. Veale*, Nos. 93–3016, 93–4180, 1995 WL 385147, at *1 (6th Cir. June 27, 1995) (per curiam), where the court considered whether an appeal of an order confirming a Chapter 11 reorganization plan was equitably moot.  The panel declined to consider the merits and found the appeal barred because, in the absence of a stay pending appeal, "[t]he Reorganization Plan is substantially completed" and "[i]t would be a hardship and unfair to all parties to go back."  *Id.* at *3.  When we next considered equitable mootness, again asking whether the doctrine should be applied to bar an appeal of a confirmation order in a Chapter 11 reorganization, we explained that equitable mootness may bar "an appeal from a Chapter 11 confirmation order" of a reorganization plan in recognition of the principle that it may no longer be "prudent to upset the plan of *reorganization* at" the time of the appeal. *City of Covington*, 71 F.3d at 1225 (emphasis added) (quoting *In re UNR Indus., Inc.*, 20 F.3d at 769) (reaching the merits upon finding that equitable mootness did not bar the appeal).

In the two decades that followed, we continued to apply equitable mootness to bar appeals only of confirmation orders of reorganization plans in Chapter 11 reorganizations.  For instance, in this court's next equitable-mootness case, the scope of the equitable-mootness doctrine remained narrow and limited to reorganizations. *See Unofficial Comm. of Co-Defs. v. Eagle-Picher Indus.* (*In re Eagle Picher Indus., Inc.*), Nos. 96–4309, 97–4260, 1998 WL

939869, at *3–5 & nn.7–8 (6th Cir. Dec. 21, 1998) (finding equitably moot an appeal of a Chapter 11 reorganization confirmation plan).  For example, the court referenced the "substantial consummation of Debtors' reorganization plan," framed the inquiry as a determination of whether the "appeal of a bankruptcy reorganization order" was moot, contemplated "whether 'piecemeal modification of the bankruptcy reorganization plan [wa]s possible or desirable,'" and repeated the purported "policy of bankruptcy law that court-approved reorganization plans be able to go forward unless a stay is obtained." *Id.* at *4 (quoting *Bennett*, 1995 WL 385147, at *2).  When we described the doctrine's preference for a stay pending appeal, we explained that such a stay "prevent[ed] reliance on the plan of reorganization while the appeal proceeds," and when a reorganization plan is implemented in its absence "the reliance interests engendered by the plan, coupled with the difficulty of reversing the critical transactions . . . counsels against attempts to unwind things on appeal." *Id.* at *4 n.7 (quoting *City of Covington*, 71 F.3d at 1226).  Even when we declined to bar an appeal as equitably moot, we continued to describe the scope of the doctrine as limited to reorganizations:  "[E]quitable mootness occurs where the plan of reorganization is substantially consummated, and where it is no longer 'prudent to upset the plan of reorganization.'"  *Guardian Sav. & Loan Ass'n v. Arbors of Hous. Assocs. Ltd. P'shp* (*In re Arbors of Hous. Assocs. Ltd. P'shp*), No. 97–2099, 1999 WL 17649, at *2 (6th Cir. Jan. 4, 1999) (quoting *City of Covington*, 71 F.3d at 1225).

When this court next addressed equitable mootness, we did so in two published opinions concerning appeals of confirmation orders in Chapter 11 reorganizations, where we again spoke to the scope of the doctrine:  *In re United Producers, Inc.*, 526 F.3d 942; *Bank of Montreal v. Official Comm. of Unsecured Creditors* (*In re Am. HomePatient, Inc.*), 420 F.3d 559 (6th Cir. 2005).  Our precedent framed the scope as follows:  "In bankruptcy proceedings . . . 'equitable mootness occurs where the plan of reorganization is substantially consummated, and where it is no longer prudent to upset the plan of reorganization.'"  *In re Am. HomePatient, Inc.*, 420 F.3d at 563 (quoting *In re Arbors of Hous. Assocs. Ltd. P'shp*, 1999 WL 17649, at *2) (adopting the Fifth Circuit's three-factor approach); *see also In re United Producers, Inc.*, 526 F.3d at 947 (stating "[t]he equitable mootness doctrine is applied in appeals from bankruptcy confirmations in order to protect parties relying upon the successful confirmation of a bankruptcy plan from a drastic change after appeal" and explaining that courts should avoid disturbing reorganization

plans). The same was true in *Liggett v. Schwartz* (*In re Schwartz*), 636 F. App'x 673, 675 (6th Cir. 2016), where the court continued to contextualize the doctrine as being one "appl[icable to] appeals from bankruptcy confirmations" of reorganization plans. *Id.* (quoting *In re United Producers, Inc.*, 526 F.3d at 947; *City of Covington*, 71 F.3d at 1225).

When this court applied the equitable-mootness doctrine to an appeal concerning the City of Detroit's Chapter 9 municipal reorganization bankruptcy, we did so specifically because of the *complex* nature of the *reorganization* before the panel. *In re City of Detroit*, 838 F.3d at 799 (majority opinion). The majority opinion explained that "the doctrine . . . was created and intended for exactly this type of scenario, to 'prevent[ ] a court from unscrambling *complex* bankruptcy reorganizations' after 'the plan [has become] extremely difficult to retract.'" *Id.* (first alteration in original) (emphasis added) (quoting *Nordhoff Inv.*, 258 F.3d at 185). Despite stating that the doctrine's substantial-consummation factor was not confined to Chapter 11 and could apply in an appeal in a municipal-reorganization bankruptcy, *id.* at 803–04, the *In re City of Detroit* majority opinion's reasoning rested on the complexity of reorganization plan before it, *see id.* at 798–99. *In re City of Detroit* does not suggest, let alone establish, a "momentum . . . moving in favor of equitable mootness's broad application." Nalbandian Concurring Op. at 16. To the contrary, it demonstrates still a commitment to applying the equitable-mootness doctrine only to appeals in complex reorganizations. *In re City of Detroit*, 838 F.3d at 799.

And, as noted above, plenty of other courts and scholars agree that the complexity of the reorganization is a central tenet of the equitable-mootness doctrine. *See, e.g.*, *New Indus., Inc. v. Byman* (*In re Sneed Shipbuilding, Inc.*), 916 F.3d 405, 409 (5th Cir. 2019) ("Equitable mootness is aimed at limiting review of complex [reorganization] plans whose implementation has substantial secondary effects."); *In re Zenith Elecs. Corp.*, 329 F.3d at 345 ("[T]he underlying purpose of the doctrine is to 'prevent[ ] a court from unscrambling complex bankruptcy reorganizations when the appealing party should have acted before the plan became extremely difficult to retract.'" (second alteration in original) (quoting *Nordhoff Invs.*, 258 F.3d at 185)); *In re One2One Commc'ns*, 805 F.3d at 438 ("The doctrine was designed to be 'limited in scope and cautiously applied,' specifically in *highly complex cases* where limited relief was not feasible and upsetting a reorganization would cause substantial harm to numerous third parties." (Krause,

J., concurring) (emphasis added) (quoting *In re Cont'l Airlines*, 91 F.3d at 559)); Chang, *supra*, at 358 ("The doctrine was designed to be expressly limited to complex reorganizations with intricate transactions."); R. Jake Jumbeck, *"Complexity" As the Gatekeeper to Equitable Mootness*, 33 Emory Bankr. Dev. J. 171, 176 (2016). In *In re Sneed Shipbuilding, Inc.*, the Fifth Circuit declined to apply equitable mootness where there was no reorganization plan and the transactions involved were not sufficiently complex. 916 F.3d at 409. ("This does not appear to be the case to expand equitable mootness into new frontiers."). As Collier notes, courts have aimed to balance implementing a reorganization plan's confirmation order with the right to appeal by considering "factors affecting the parties and the reorganization" as well as "tak[ing] into account the size and complexity of the reorganization and . . . attempt[ing] to restrict the doctrine to only the most complicated and complex of reorganizations." 7 Collier on Bankruptcy ¶ 1129.09.

All told, in every instance in which this court has contemplated applying equitable mootness to bar review of the merits of an appeal, this court has remained committed to applying it narrowly—only contemplating barring appeals of confirmation orders of reorganization plans and inquiring into the complexity of the plan. Like other circuits, this circuit's precedents demonstrate that this court "treat[s] [the doctrine] as a 'scalpel rather than an axe.'"**[3]** *In re Sneed Shipbuilding, Inc.*, 916 F.3d at 409 (*quoting Bank of N.Y. Trust Co. v. Official Unsecured Creditors' Comm.* (*In re Pacific Lumber Co.*), 584 F.3d 229, 240 (5th Cir. 2009)); *see also In re Am. HomePatient, Inc.*, 420 F.3d at 565 ("err[ing] on the side of caution and deny[ing] . . . motion to dismiss the appeal on the grounds of equitable mootness" where the court did not believe the requested relief would unscramble complex transactions and upset the success of the reorganization plan).

---

**[3]***See also In re Trib. Media Co.*, 799 F.3d 272, 278 (3d Cir. 2015) (describing the doctrine as narrow and instructing that courts apply it "with a scalpel rather than an axe" (quoting *Alberta Energy Partners v. Blast Energy Servs., Inc.* (*In re Blast Energy Servs., Inc.*), 593 F.3d 418, 425 (5th Cir. 2010)); *In re One2One Commc'ns*, 805 F.3d at 438 (explaining the doctrine was "designed to be 'limited in scope and cautiously applied" (quoting *In re Cont'l Airlines*, 91 F.3d at 559); *In re Nuverra Env't Sols., Inc.*, 834 F. App'x 729, 737 (3d Cir.), *as amended* (Feb. 2, 2021), (Krause, J., concurring) (stressing the importance of "confin[ing] equitable mootness to the narrow role envisioned by our precedents"), *cert. denied sub nom. Hargreaves v. Nuverra Env't Sols., Inc.*, 142 S. Ct. 337 (2021).

## II. EQUITABLE MOOTNESS AND CHAPTER 7 LIQUIDATIONS

We must next ask whether the equitable-mootness doctrine is compatible with Chapter 7 liquidations. We start by recognizing that "courts have often indicated a reluctance to move beyond" applying the doctrine "to appeals from orders confirming plans of reorganization in chapter 11"—including in Chapter 7 liquidations. 7 Collier on Bankruptcy ¶ 1129.09; *In re San Patricio Cnty. Cmty. Action Agency*, 575 F.3d at 558 ("It is certainly arguable that equitable mootness has no application to an appeal in a Chapter 7 liquidation."). This makes sense given the different concerns that arise when considering an appeal of a confirmation order of a reorganization plan and a bankruptcy court's orders in a Chapter 7 liquidation.

Chapter 11 reorganization proceedings, the setting in which the equitable-mootness doctrine is most commonly applied, "aim to give the debtor 'breathing room and powerful tools to rescale its operations and, in time, to modify both the debt and equity portions of its capital structure,' rather than liquidating its assets and closing its doors for good." Rosiek, *supra*, at 686 (quoting George M. Treister et al., Fundamentals of Bankruptcy Law 365 (5th ed. 2004)). Bankruptcy policy favors these reorganization proceedings over liquidation. *See id.* at 692 ("The policy of the courts favors keeping companies running rather than liquidating them."); 7 Collier on Bankruptcy ¶ 1129.09 (explaining that the bankruptcy code itself demonstrates this policy preference in its treatment of finality with regards to reorganizations). Reorganization plans require speedy implementation because delaying a reorganized entity from "restarting its operations can have devastating effects on its chances for long term success." Rosiek, *supra*, at 697.

Reorganization plans also invoke third-party reliance interests. When discussing equitable mootness and talking about protecting third-party reliance interests, there is a desire to "want to encourage behavior . . . that contributes to a successful reorganization." *See In re Trib. Media Co.*, 799 F.3d at 279. The doctrine can serve as a tool "to ensure the success of [the debtor's] attempt to reorganize." Rosiek, *supra*, at 686. Thus, the doctrine applies to bar an appeal of a confirmation order of a reorganization plan to avert the "negative consequences for both the debtor company reorganizing and those third parties which have entered into agreements with the debtor company in reliance upon the finality of its emergence from

bankruptcy," which may occur when enough of the reorganization plan has been implemented. Rosiek, *supra*, at 691 ("This ability to add a dose of practicality to such proceedings is necessary to ensure that the appeals of the few creditors unhappy with the plan do not thwart the larger goal of enabling the company to emerge from bankruptcy."). As the Fifth Circuit explained, reorganizations "maintain a debtor in operation and may result in substantial changes in ownership, management, and business relations. New contracts may be entered, such as new arrangements with suppliers and others. All of that and more result in expectation interests that courts are loath to upset." *In re San Patricio Cnty. Cmty. Action Agency*, 575 F.3d at 558.

*In re Tribune Media Co.* noted that equitable mootness, when properly applied, can help the estate wind up, the reorganized entity begin to do business again, investors of the reorganized entity feel confident in investing with or in the reorganized entity, future lenders begin to collect interest, and customers who rely on the reorganized entity's product begin to buy from the debtor again—all reflecting that "it is easier to do business with an entity outside of bankruptcy." 799 F.3d at 279–80. Applied properly, "[e]quitable mootness assures these stakeholders that a plan confirmation order is reliable and that they may make financial decisions based on a reorganized entity's exit from Chapter 11 without fear that an appellate court will wipe out or interfere with their deal." *Id.* at 280. *In re Tribune Media Co.* summarized this discussion as follows:

> The theme is that the third parties with interests protected by equitable mootness generally rely on the emergence of a reorganized entity from court supervision. When a successful appeal would not fatally scramble a confirmed and consummated plan, this specific reliance interest most often is not implicated, as the plan stays in place (with manageable modifications possible) and the reorganized entity remains a going concern.

*Id.*

Simply put, these concerns and rationales are not implicated in Chapter 7 liquidations. "Chapter 7 governs only simple liquidations in which all non-exempt assets are liquidated and distributed to creditors. In such cases, there are rarely intricate transactions that need to be

unraveled."**4**  Chang, *supra*, at 364.  As a general matter, "[l]iquidation plans do not invoke third party reliance or a need for finality, the pillars upon which equitable mootness rests."  Jumbeck, *supra*, at 202; *cf.* Rosiek, *supra*, at 687 (explaining that "the success of a Chapter 11 reorganization plan depends on its finality" and "the finality of a court's confirmation of a Chapter 11 reorganization plan is the basis for a potential creditor's willingness to extend credit to the company that is the subject of the bankruptcy proceeding").**5**  In the more simple Chapter 7 liquidation, the debtor is not "emerg[ing as] a reorganized entity," that conducts business that triggers the reliance interest of third parties.  *See In re Trib. Media Co.*, 799 F.3d at 280.

Despite asking us to expand broadly the situations in which we apply the equitable-mootness doctrine and decline to hear the merits of even more appeals, Gold has failed to articulate *how* or *why* this doctrine is compatible with Chapter 7 liquidations.  And no other circuit court has affirmatively embraced the equitable-mootness doctrine in Chapter 7 liquidations.  Instead, and contrary to Judge Nalbandian's suggestion, in the limited instances in which some other circuits have encountered the doctrine in appeals in Chapter 7 bankruptcies, they have either avoided deciding the threshold issue of whether the doctrine applies in Chapter 7 cases because the doctrine was inapplicable based on the facts before them, *see, e.g.*, *In re San Patricio Cnty. Cmty. Action Agency*, 575 F.3d at 558; held that the equitable-mootness doctrine did not apply in specific Chapter 7 bankruptcies before them without discussing the threshold issue, *see, e.g.*, *Hicks, Muse & Co. v. Brandt* (*In re Healthco Int'l, Inc.*), 136 F.3d 45, 48–49 (1st Cir. 1998) (holding that the equitable-mootness doctrine did not bar an appeal in a Chapter 7 bankruptcy); *Fitzgerald v. Ninn Worx Sr., Inc.* (*In re Fitzgerald*), 428 B.R. 872, 881–82 (B.A.P. 9th Cir. 2010) (same); or affirmed application of the doctrine without any discussion of its applicability in Chapter 7 cases, *see, e.g.*, *Drawbridge Special Opportunities Fund, L.P. v.*

---

**4**The appeal before us serves as a good example; it involves six creditors and less than $1.1 million in unsecured claims.  Gold R. 4, Record, Page ID #807.

**5**Collier offers some additional examples of when equitable mootness is less likely to occur.  *See* 7 Collier on Bankruptcy ¶ 1129.09 ("[I]f an appeal simply reallocates consideration from one class of creditors to another, it is less likely to be equitably moot than an appeal which seeks to attack a plan provision relied upon by an investor who has furnished hard consideration."); *id*. (explaining that "appeals which focus on just one small part of a plan, or which can be cured by a monetary payment, rarely will be held to be equitably moot," which reflects a policy preference "of promoting rehabilitation and reorganization over liquidation").

*Shawnee Hills, Inc.* (*In re Shawnee Hills, Inc.*), 125 F. App'x 466, 469–70 (4th Cir. 2005) (per curiam) (affirming equitable-mootness determination without discussing the doctrine's applicability in Chapter 7 bankruptcies).

Ultimately, we must decline the request to expand broadly an already questionable doctrine. Having started with the presumption that we "should hear and decide on the merits cases properly before [us]," *In re VeroBlue Farms USA, Inc.*, 6 F.4th at 891 (quoting *In re Semcrude, L.P.*, 728 F.3d at 326), and finding the characteristics of a Chapter 7 liquidation far too distinct from the doctrine's rationale and its scope as delineated by our precedent, we hold that the doctrine of equitable mootness has no place in Chapter 7 liquidations. Therefore, we reverse the district court's finding that the appeal is equitably moot and remand for the district court to consider the merits of Taleb's claim that Gold received fees and expenses that were too high for the work Gold performed as trustee.